RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0031p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

DENZELL RUSSELL,

        *Defendant-Appellant*.

No. 20-3756

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cr-00786-2—James S. Gwin, District Judge.

Decided and Filed: February 16, 2022

Before: McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges

───────────────

## COUNSEL

**ON BRIEF:** Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. Denzell Russell was a passenger in a car that the East Cleveland Police stopped and searched. The police found two handguns, which resulted in a felon-in-possession charge for Russell. He argues that the search violated the Fourth Amendment. But to assert a Fourth Amendment claim, Russell must have "standing" to challenge the search. And normally a car passenger without a possessory interest in the car lacks such standing.

The government, though, failed to object to Russell's lack of standing before the district court and raised the argument for the first time on appeal. Fourth Amendment standing, unlike Article III standing, is not jurisdictional and so it can be forfeited or waived. And Russell contends that here the government forfeited or even waived the argument. But under our precedent, the government can raise a forfeited argument for the first time on appeal and prevail if it satisfies the plain-error inquiry under Fed. R. Crim. P. 52(b). Because the government only forfeited its standing claim and satisfies that plain-error test, we **AFFIRM**.

I.

This story began in East Cleveland shortly after a vigil being held for the victim of a gang-related shooting. Anticipating there might be retaliation in response to the shooting, the police were on "high alert" and sent out extra patrols near the vigil. Denzell Russell attended the vigil. And when he was ready to leave, he got into Akeem Farrow's car and sat in the passenger's seat while Farrow drove.

As they were patrolling the neighborhood, the police noticed Farrow's car "slow rolling." The officers saw the car driving slowly then suddenly speed up. Suspicious that the driver was trying to avoid police detection, the officers pulled the car over.

When they approached, the officers noticed an open bottle of tequila in the back seat. So they removed the men from the car. They frisked them, handcuffed them, and placed them in the police cruiser. Then they searched Farrow's car.

What did they find? Two loaded firearms and two bullet-proof vests. One firearm was under Farrow's seat, the other under Russell's seat. Russell and Farrow admitted that the firearms and vests were theirs.

Because of Russell's extensive criminal record, the government charged him with being a felon in possession of a firearm. Russell moved to suppress the contraband seized during the search. But the district court denied his motion. The court gave two reasons why the search was reasonable. It explained that the police had probable cause given the open container, and that they could conduct a protective search. Alternatively, the court held that even if the search was

unreasonable, Russell still couldn't challenge it.  This was because he lacked Fourth Amendment standing.  The court raised standing sua sponte because the government failed to raise the argument.

Unable to suppress the evidence, Russell pled guilty.  But he preserved his right to appeal, which he now exercises.

## II.

We review the court's factual findings for clear error and its conclusions of law de novo. *United States v. Bateman*, 945 F.3d 997, 1004-05 (6th Cir. 2019).  We consider the evidence "in the light most likely to support the district court's decision" and "affirm[] on appeal if the district court's conclusion can be justified for any reason."  *Id.* at 1005 (quoting *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019)).

## III.

Because the Fourth Amendment protects "[t]he right of the people to be secure in *their* persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV (emphasis added), Fourth Amendment rights are said to be "personal."  *Rakas v. Illinois*, 439 U.S. 128, 133 (1978) (citation omitted).  So a defendant must show that "his own" rights were "infringed."  *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (quoting *Rakas*, 439 U.S. at 133).  Courts use "standing" as a "shorthand" for this requirement.  *Id.* at 1530. Here, the government didn't challenge Russell's Fourth Amendment standing before the district court.  But this isn't fatal.  The government may object to Fourth Amendment standing for the first time on appeal if it hasn't waived the argument.  *See United States v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014).  And it can prevail if it meets the plain-error inquiry under Fed. R. Crim. P. 52(b).  *See id.*

Accordingly, we proceed in two parts. We first decide if the government here waived the argument. We find that it didn't. So we ask our next question: Has the government satisfied the plain-error inquiry under Rule 52(b)? We find that it has.[1]

A.

Begin with waiver. Russell argues that the government waived any objection to his lack of Fourth Amendment standing by not raising it below. We disagree.

The terms "forfeiture" and "waiver" are sometimes used "rather loosely." *Noble*, 762 F.3d at 528. But the Supreme Court has made their distinction clear. A forfeiture is "the failure to make the timely assertion of a right" whereas a waiver is "the intentional relinquishment or abandonment of that right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted). Thus, a party waives an argument only if it "expressly abandon[s]" an issue. *United States v. Denkins*, 367 F.3d 537, 542 (6th Cir. 2004). And if an argument is waived, we don't consider it. *Id.*

True, the government could waive its objection to Fourth Amendment standing. *See Noble*, 762 F.3d at 528. After all, Fourth Amendment standing is a merits question, not a jurisdictional one. *See Rakas*, 439 U.S. at 138-39. But to waive the argument, the government must either (1) take some step to "expressly abandon" it or (2) fail to raise it in its first brief on appeal. *See Noble*, 762 F.3d at 528.

Indeed, we confronted a similar situation in *Noble*. There, like here, the government failed to raise its objection to Fourth Amendment standing before the district court. *See* 762 F.3d at 526-28. We held this was a forfeiture, not a waiver. *Id.* at 528. So we concluded that the government could raise the argument for the first time on appeal and prevail under the plain-error inquiry. *Id.* Yet, because the government had failed to raise the argument in its opening brief on appeal, we held that it had waived the argument. *Id.* So we never had the opportunity to review for plain error.

---

[1]Since Fourth Amendment standing is enough to decide the case, we don't address the reasonableness of the search under the Fourth Amendment. This is especially because the government concedes that the open liquor bottle doesn't provide the police with probable cause.

Here we pick up where *Noble* left off.  The government's failure to raise the argument below was merely a forfeiture, not a waiver.  *See id.* at 527.  This is because the government took no steps to "expressly abandon" its objection.  *Denkins*, 367 F.3d at 542.  And, unlike in *Noble*, the government raised its objection to Russell's standing in its opening brief on appeal.  So the government didn't waive its objection to Russell's Fourth Amendment standing.

Russell pushes back.  As he sees it, when he moved to suppress evidence, the government was on notice that he was invoking standing.  And not only did the government fail to object to standing, it also "agreed" that the issue before the court was narrow, dealing only with the reasonableness of the search.  This, he argues, was an express waiver.  But, we aren't convinced.

Russell conflates waiver with forfeiture.  *See Noble*, 762 F.3d at 528.  Even if the government was implicitly put on notice, it took no action to abandon its objection to Russell's standing.  Instead, by focusing on only one issue, it merely failed to object.  And failing to object is not a waiver, but a forfeiture.  *See United States v. Mabee*, 765 F.3d 666, 671 (6th Cir. 2014).  So there was no "intentional relinquishment."  *Noble*, 762 F.3d at 528 (quoting *Olano*, 507 U.S. at 733).  Had the government, for example, conceded that Russell has Fourth Amendment standing, then it would have waived the argument.[2]  *See Mabee*, 765 F.3d at 673 (finding waiver if there is "a plain, explicit concession"); *cf. Noble*, 762 F.3d at 527 (government filing letter conceding that it waived the standing issue on appeal).

Russell next turns to policy.  He claims that if we allow the government to raise standing for the first time on appeal, we will deprive defendants of an opportunity to respond and would give the government "a second bite at the apple."  Reply Br. at 7.

But we have already explained why these concerns are unavailing.  *See Noble*, 762 F.3d at 528.  True, the government gets a "second bite at the apple."  *Id.*  But standing is "an element" of a Fourth Amendment suppression claim anyway.  *Id.* at 526.  So the defendant bears the "burden" of showing he has standing.  *Id.*  And on appeal, the defendant "continues to bear the

---

[2]Russell's waiver argument proves too much anyway.  If we accepted his view, the government will presumably always be on notice of standing when a defendant makes a motion to suppress.  So any time it fails to object it would waive the argument.  But this would create precisely the per se rule that we rejected in *Noble*.  *See* 762 F.3d at 527.

burden of showing that he has standing." *Id.* at 528 (citing *United States v. Paopao*, 469 F.3d 760, 764 (9th Cir. 2006)). In other words, there is no worry that the defendant will be unable to respond because he has the burden of proving standing in the first place.

In sum, the government hasn't waived its objection to Russell's standing. And, since it properly raised standing in its first brief on appeal, it can prevail if it meets the plain-error hurdle under Rule 52(b). *See Noble*, 762 F.3d at 528.

B.

Turning to plain error, the government must show that the forfeited error was clear and affected its substantial rights. *See Olano*, 507 U.S. at 733-34; *United States v. Cavazos*, 950 F.3d 329, 334 (6th Cir. 2020). But even if the government makes all these showings, we don't automatically remedy the error. *Olano*, 507 U.S. at 735 ("Rule 52(b) is permissive, not mandatory."). Instead, we have discretion to remedy the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736 (citation omitted).

Admittedly, plain error is an odd fit here. *Cf. United States v. Barajas-Nunez*, 91 F.3d 826, 833 (6th Cir. 1996). After all, it's generally the defendant, not the government, who receives plain error review. *Id.* But we have already held that the government can benefit from plain error for its forfeited claims. *Id.* We explained that the language of Rule 52(b) doesn't distinguish between the government and defendants.**[3]** *Id.* So we couldn't "assume that either the *Olano* Court or the drafters of Fed. R. Crim. P. 52(b) intended that only defendants and never the government should be able to demonstrate that a plain error affected substantial rights." *Id.* Indeed, we noted that the language of Rule 52(b) allows the court to take "notice[]" of a plain error even if the error wasn't brought to its attention by one of the parties.**[4]** *Id.* And our

---

**[3]**Rule 52(b) in its entirety provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b).

**[4]**There is another reason, specific to this case, why plain error is an odd fit. The district court raised the standing issue sua sponte and found that Russell lacked standing. So unlike a typical plain-error case where the trial court has no opportunity to rule on the relevant question, here the district court did so after raising the issue itself. And, as it turns out, the court didn't err in finding that Russell lacked standing.

The parties, for their part, argue over whether the district court's raising of the issue sua sponte was proper. The government, relying on our published decision in *United States v. Bah*, 794 F.3d 617 (6th Cir. 2015), contends that the trial court properly raised Russell's lack of standing sua sponte, and that we should affirm on that ground.

conclusion is not an outlier either.  Most of our sister courts have also allowed the government to do this.**5**

With that in mind, we embark on the plain-error inquiry.

*Clear Error.* To show that an error was clear, the government must prove that the defendant "plainly lacked standing."  *See Noble*, 762 F.3d at 528.  And a defendant has standing only if he has a Fourth Amendment interest in the property searched.  *Byrd*, 138 S. Ct. at 1530.  This interest can either be a property or a privacy interest.  *Id.* at 1526.  As a car passenger who didn't own or lease the car, Russell has neither.  *See Rakas*, 439 U.S. at 148-49 (holding that a car passenger has no Fourth Amendment standing in the car); *United States v. Pino*, 855 F.2d 357, 360 (6th Cir. 1988) (same).

Russell has no property interest in the car because he has no ownership or possessory interest in it.  The record is clear that he wasn't driving, and that the car belonged to Farrow.  And Russell makes no claim to the contrary.  Nor does Russell have a privacy interest in the car.  Why?  Because a car passenger doesn't have a legitimate expectation of privacy in the area under the passenger's seat—which is where the contraband here was found.  *See Rakas*, 439 U.S. at 148-49; *see also United States v. Pino*, 855 F.2d 357, 360 (6th Cir. 1988) (no privacy interest for a passenger in a rental car).  So as a passenger without a privacy or property interest in the car, Russell lacks standing.  *See United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015).

---

And nothing in Rule 52(b) would seem to preclude a court from raising an issue sua sponte.  Russell counters that the trial court erred in raising the issue sua sponte, citing our unpublished decision in *United States v. Knowledge*, 418 F. App'x 405, 407-08 (6th Cir. 2011).  But, we don't need to decide the issue.  This is because even assuming the district court erred in raising the issue sua sponte, *see United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020), that would only mean that the government forfeited the issue.  So it still would have had the right to raise standing itself for the first time on appeal if it can satisfy plain error.  And because this is enough to decide the issue, we will not consider whether the district court erred in raising it sua sponte.

**5***United States v. Mix*, 791 F.3d 603, 612 (5th Cir. 2015) (holding that the government is "entitled to plain error review" of forfeited arguments); *United States v. Blatstein*, 482 F.3d 725, 729 (4th Cir. 2007) (same); *United States v. Dickerson*, 381 F.3d 251, 257 (3d Cir. 2004) (same); *United States v. Clark*, 274 F.3d 1325, 1328 (11th Cir. 2001) (same); *United States v. Sprei*, 145 F.3d 528, 533-34 (2d Cir. 1998) (same); *United States v. Edelin*, 996 F.2d 1238, 1245 (D.C. Cir. 1993) (same); *United States v. Rodriguez*, 938 F.2d 319, 322 & n.4 (1st Cir. 1991) (same); *United States v. Mendoza*, 543 F.3d 1186, 1191 n.2 (10th Cir. 2008) (calling it a "settled proposition").  *Compare United States v. Jackson*, 207 F.3d 910, 917 (7th Cir.) (calling it "unusual" but saying nothing "prevent[s] it), *vacated on other grounds*, 531 U.S. 953 (2000); *with United States v. Jones*, 73 F.3d 336, 351 (7th Cir. 2013) (saying it's "not obvious" as a rule but recognizing a "few compelling cases").

Russell responds that it would be unfair to find that he lacks standing since he had no reason to put forward evidence of his standing. But this is not a worry here. As we already said, the defendant bears the burden of establishing standing. *Noble*, 762 F.3d at 526, 528. And this burden "continues" even on appeal. *Id.* at 528. So even if the government didn't object, Russell had at least some burden to establish standing, and it's only fair to require him to meet it. *Cf. Rakas*, 439 U.S. at 133.

And even if the government's litigating conduct gave Russell no incentive to put his best foot forward in the proceedings below, we still don't think there is unfairness here. After all, the government will prevail on appeal in this context only if it can show that the defendant clearly has no standing. And it's obvious from the record that Russell checks this box. He admitted to being a passenger in a car that he didn't own and he doesn't contest that claim now. In fact, it's not apparent what kind of evidence Russell could present to establish his standing. On appeal, in the face of the government's argument, he hasn't told us what kind of evidence he would use to establish his standing. So we are not persuaded that there is any unfairness here.

*Substantial Rights.* Next, the government must show that the error affected its substantial rights. Again, this is an "unusual" requirement. *See Barajas-Nunez*, 91 F.3d at 833. After all, it's "far easier for a defendant to show violation of his substantive rights." *Id.* But as we already noted, the language of Fed. R. Crim. P. 52(b) doesn't distinguish between the government and defendants. So just as with defendants, an error affects the government's substantial rights if "the error affects the outcome of the district court proceedings." *Id.* And here it does.

In *Barajas-Nunez*, we held that an error that decreases a sentence affects the government's substantial rights in having a defendant "be sentenced correctly." *Id.* So too here. Any error as to Russell's standing would likely lead to the suppression of the firearm evidence, the only evidence against him for the felon-in-possession charge. This would likely result in the dismissal of the government's case against Russell. So Russell would likely receive no sentence. And, as in *Barajas-Nunez*, this affects the government's substantial rights. *See id.*; *cf. United States v. St. Pierre*, 488 F.3d 76, 79 n.2 (1st Cir. 2007) (finding no plain error as to *defendant* when court failed to suppress evidence because there was "other substantial evidence of guilt").

*Fairness Standard.* Finally, we only exercise our discretion to correct a plain error if it would "seriously affect the fairness, integrity, or public reputation of the judicial proceeding" not to. *See Olano*, 507 U.S. at 736 (alterations omitted). The government argues that this standard is met because an error as to Russell's standing would lead to the suppression of a firearm as evidence against Russell when none of his rights were violated. We agree. In fact, we find it hard to imagine a case where the government won't be able to meet this standard if it has met the others.

An error seriously affects the fairness, integrity, or public reputation of the judicial proceeding if it leads a "reasonable citizen" to "bear a rightly diminished view of the judicial process and its integrity." *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1908 (2018) (quoting *United States v. Sabillon-Umana*, 722 F.3d 1328, 1333-34 (10th Cir. 2014) (Gorsuch, J.)). In the Fourth Amendment standing context, an error as to a defendant's standing would do just that. Why? Because it would allow the defendant to benefit from the exclusionary rule when none of his rights were violated.

The Supreme Court has explained that indiscriminate application of the exclusionary rule—even when, unlike in this case, a defendant's Fourth Amendment rights were violated— "generat[es] disrespect for the law and administration of justice." *Stone v. Powell*, 428 U.S. 465, 491 (1976). This is why the Court has been cautious in extending the exclusionary remedy to cases where it won't deter government action. *See id.* at 486-87 (refusing to extend the remedy to habeas cases). So when the remedy wouldn't deter the government, the costs of "deflect[ing] the truthfinding process" and "free[ing] the guilty" outweigh any benefit of using the remedy. *Id.* at 490; *see also Barajas-Nunez*, 91 F.3d at 833 (holding that an error that would result in a lesser punishment affects the fairness of the judicial proceeding).

In fact, the standing doctrine is "premised on the view that" whatever the benefits are of extending the remedy to someone without standing, they "are outweighed by the further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." *Stone*, 428 U.S. at 488-89 (quotation marks omitted). In other words, allowing a defendant whose rights weren't

violated to benefit from the exclusionary remedy would be too costly and would generate disrespect for the law.

So too here.  Allowing Russell to benefit from the exclusionary remedy would lead to a rightfully diminished view of the judicial proceeding.  After all, because he has no standing, Russell would be benefiting from the exclusionary rule when none of his rights were violated.  Without the firearm evidence against him, Russell would go free.  True, the Supreme Court is sometimes willing to bear the costs of letting the criminal "go free because the constable has blundered."  *Herring v. United States*, 555 U.S. 135, 148 (2009) (quoting *People v. Defore*, 150 N.E. 585, 587 (N.Y. 1926) (Cardozo, J.); *United States v. Calandra*, 414 U.S. 338, 350-51 (1974).  But that's only when it would serve the purposes of enforcing the Fourth Amendment by deterring government action.  *Stone*, 428 U.S. at 494-95.  That purpose isn't served when the defendant can't even show a Fourth Amendment violation.  So allowing Russell to benefit from the exclusionary rule when none of his rights were violated would seriously affect the fairness, integrity, or public reputation of the judicial proceeding.

## IV.

As a passenger, Russell has no Fourth Amendment standing to challenge a search of Farrow's car.  The government for some reason failed to make that argument before the district court.  But it caught its mistake, raised the argument in its opening brief, and satisfied plain-error review.  So we **AFFIRM**.