NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0211n.06

Case No. 21-3587

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 31, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| DENNIS MCKENZIE, | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: COLE, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. One night on patrol, a unit of the Cleveland Police Department tasked with snuffing out gang activity saw a vehicle parked illegally on the street. The vehicle's passenger, Dennis McKenzie, was acting erratically and eventually disobeyed orders and exited the vehicle. In the ensuing struggle to detain McKenzie, an officer looked into the vehicle at the floor of the passenger seat—where McKenzie could've reached—and saw a gun. McKenzie was arrested and charged with being a felon in possession.

The district court denied McKenzie's motion to suppress the gun seized by officers during his arrest because he lacked Fourth Amendment standing. Prior to that, it also granted in part the government's motion to exclude a district court order, which had cast doubt on similar testimony from the officer who saw McKenzie's gun, from an unrelated case because that order was extrinsic evidence. For the reasons below, the district court correctly ruled on both motions, and we **AFFIRM**.

**I.**

*The Traffic Stop*. Members of the Cleveland Police's Gang Impact Unit (GIU) were patrolling Yeakel Avenue, an area in Cleveland known for gang activity. That night, members of the unit were in unmarked police vehicles and plain clothes but wearing vests that said "Police." During the patrol, Sergeant Al Johnson noticed a vehicle parked illegally, so he pulled up behind it and alerted other GIU members of his location. All told, four squad cars arrived at the scene.

At that point, Sergeant Johnson and other officers approached the vehicle. But as they got close, McKenzie opened the passenger door and started getting out of the vehicle. One of the officers ordered McKenzie back inside the vehicle, which he did. Back in the car, McKenzie began moving back and forth, yelling at the officers. As that was going on, another officer spoke with the driver of the vehicle who appeared to be an underage female and was wearing only jeans and a bra.

McKenzie then exited the vehicle, and when the officers tried to detain him, he struggled against their efforts. During the struggle, Sergeant Johnson stepped between McKenzie and the vehicle, looked inside at McKenzie's "lunge area"—where he'd be able to reach in the car—and saw a gun under the seat. As officers arrested McKenzie, another officer secured the gun. Concerned for the young woman's well-being, Detective Robert Kowza checked on her and gave her a jacket from the backseat. The young woman told Detective Kowza that nothing in the vehicle was hers.

*District Court Proceedings.* A grand jury indicted McKenzie for being a felon in possession of a firearm and ammunition, violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). McKenzie moved to suppress the confiscated gun because it came from an unreasonable search

and seizure. The government responded that as a passenger, McKenzie didn't have a reasonable expectation of privacy in the vehicle and that he wasn't seized until he tried to flee the scene.

For its part, the government filed a motion in limine to prevent McKenzie from using extrinsic evidence to attack Sergeant Johnson's credibility. In particular, the government wanted to prevent McKenzie from cross-examining Sergeant Johnson about a ruling in another case in which the district court granted a motion to suppress. In that case, *United States v. Fips*, the district court found that some of the government's testimony (including Sergeant Johnson's) was "inconsistent" and "contradictory." No. 1:18-cr-722, 2020 WL 5814597, at *3 (N.D. Ohio Sept. 30, 2020). Citing Federal Rule of Evidence 608(b), the government argued that the *Fips* order was not probative of Sergeant Johnson's truthfulness and only stood for the district court's finding that more evidence weighed in Fips's favor than the government's. McKenzie didn't respond to the motion.

The district court began the suppression hearing by having both parties argue the motion in limine. After considering the arguments, the district court found a middle ground. It granted the government's motion in part; McKenzie could impeach Sergeant Johnson if he made statements about GIU procedures inconsistent with his prior testimony, but McKenzie could not "use [the] opinion and what [was] said in there as extrinsic evidence to impeach." (R. 41, Suppression Tr., PageID #216; *see also United States v. McKenzie*, No. 1:20-cr-22, 2021 WL 698614, at *1 n.1 (N.D. Ohio Feb. 23, 2021) (precluding the introduction of the opinion in *Fips* but allowing impeachment during cross-examination of prior inconsistent statements).) McKenzie's counsel responded, "I don't have a problem with that." (R. 41, Suppression Tr., PageID #216.) With that seemingly settled, the district court asked McKenzie to respond to the government's argument that McKenzie lacked standing to bring his motion. But McKenzie argued

3

that he needed to have the officers testify to make his standing argument, so the district court went forward with the testimony. All in all, three officers testified: Sergeant Johnson, Detective Kowza, and Detective Michael Harrigan.

During their testimony, the three officers laid out largely the same version of the events that occurred the night of McKenzie's arrest. For example, the district court found that the "officers testified consistently and convincingly that the SUV in question was parked on a city street in violation of a Cleveland municipal ordinance." *McKenzie*, 2021 WL 698614, at *4. What's more, McKenzie cross-examined all three officers, even though he didn't try to impeach Sergeant Johnson with any prior inconsistent statements. After the testimony, the government reiterated its argument that McKenzie lacked standing to challenge the search, and even if he did, the officers had probable cause to perform the traffic stop and any search was reasonable.

The district court took the arguments and testimony under advisement and then issued a written opinion denying McKenzie's suppression motion. *See McKenzie*, 2021 WL 698614, at *5. For standing, the district court bifurcated its analysis. Based on our caselaw, it found that McKenzie lacked standing to challenge any subsequent search of the vehicle. *Id.* at *3. As a result, McKenzie would have standing to challenge the initial stop, but only if he could show the stop was invalid. *Id.* But because the record demonstrated that the officers had probable cause for the initial stop, McKenzie lacked standing, so the district court denied his motion. *Id.* at *4–5. The district court then said that even if McKenzie had standing to challenge the discovery of the weapon, his motion would be denied because the officers' search of the vehicle was reasonable and supported by probable cause. *Id.* at *5.

4

Following the district court's denial of the motion to suppress, McKenzie entered into a plea agreement with the government and the district court sentenced McKenzie to 77 months in prison. McKenzie timely appeals.

## II.

On appeal, McKenzie challenges the district court proceedings in two ways. First, he argues that the district court erred in partially granting the government's motion in limine. And second, McKenzie argues that the district court erred in denying his motion to suppress.

## A.

We review a district court's ruling on a motion in limine for an abuse of discretion. *Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard." *United States v. Harris*, 881 F.3d 945, 949 (6th Cir. 2018) (internal quotation omitted).

McKenzie attacks the district court's ruling on the motion in limine in two ways. First, he argues that the ruling misapplied Federal Rule of Evidence 608(b). Second, he invokes the Confrontation Clause, but fails to develop an argument on the issue.[1]

---

[1] We review evidentiary rulings of the district court related to violations of the Confrontation Clause de novo. *See United States v. Adams*, 722 F.3d 788, 829 (6th Cir. 2013). True, even though he cross-examined Sergeant Johnson, McKenzie makes a passing reference to the Confrontation Clause in his summary of the argument and in the conclusion of his argument on the motion in limine. But he does nothing else to develop this Confrontation Clause argument except by reference. It's well-established that "'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed' forfeited." *United States v. Jenkins*, 821 F. App'x 504, 508 (6th Cir. 2020) (quoting *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006)). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alteration and citation omitted). And for what it's worth, McKenzie and the government both agree that the standard of review for this issue is abuse of discretion.

The applicable law here is Federal Rule of Evidence 608(b). That Rule provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness." Fed. R. Evid. 608(b). "But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness . . . of . . . the witness." *Id.* at (b)(1). Put another way, "Rule 608(b) limits the use of evidence 'designed to show that the witness has done things, unrelated to the suit being tried, that make him more or less believable per se.'" *Id.* (2003 advisory note) (quoting *United States v. Fusco*, 748 F.2d 996, 998 (5th Cir. 1984)). This Rule excluding extrinsic evidence is "designed to prevent distracting mini-trials on collateral matters." *Boggs v. Collins*, 226 F.3d 728, 744 (6th Cir. 2000).

To start with, we've held that "a judicial opinion making a credibility determination . . . appear[s] to be the type of extrinsic evidence disallowed by Rule 608(b)." *United States v. Richardson*, 793 F.3d 612, 628 (6th Cir. 2015), *vacated on other grounds by* 577 U.S. 1129 (2016); *see also United States v. Jones*, 889 F.3d 876, 880 (7th Cir. 2018) (finding that a judicial determination questioning the credibility of a witness was only admissible under Rule 608(b) if it included a determination that the witness lied); Wright & Miller, 28 Federal Practice & Procedure: Evidence § 6117 (2d ed. 2020) (including "other judicial decisions" as a type of specific-instance evidence). The *Fips* order lacks a finding that Johnson lied, so the district court was within its discretion to exclude the order in *Fips* from being used to impeach Sergeant Johnson on cross-examination.

To be sure, McKenzie doesn't argue that the opinion should have been admitted. Rather, he argues that the district court erred when it "prevented . . . McKenzie[] from cross-examining [Sergeant Johnson]" about inconsistencies in his testimony. Yet that's not what happened.

6

McKenzie was able to, and did, cross-examine Sergeant Johnson. That his counsel chose not to impeach Sergeant Johnson with prior inconsistent testimony (without using the *Fips* order) is not an error on the district court's part.

Though not entirely clear, McKenzie really seems to be arguing against the language in the government's motion instead of what the district court said. True, in its motion in limine the government sought to "prevent cross-examination by . . . referencing testimony from *United States v. Fips*." But it's the district court's language, not the government's, that matters here. At the hearing, the district court said that McKenzie couldn't "use [the] opinion and what [the court] said in there as extrinsic evidence to impeach." (R. 41, Suppression Tr., PageID #216.) McKenzie's counsel agreed with that ruling. And again, in its written opinion, the district court reiterated that while it precluded the introduction of the order, it ruled that McKenzie "was free to impeach Sergeant Johnson with any inconsistent statements from this prior proceeding." *McKenzie*, 2021 WL 698614, at *1 n.1.

In any event, even if McKenzie were right about what the district court did, we afford the district court "discretion to limit the scope of cross-examination." *Boggs*, 226 F.3d at 736. But because the district court didn't improperly limit McKenzie's cross-examination of Sergeant Johnson, our inquiry ends here. The district court properly applied Rule 608(b). It excluded extrinsic evidence but allowed McKenzie to cross-examine Sergeant Johnson about his prior testimony. A district court doesn't abuse its discretion by correctly applying the law.

**B.**

Next, McKenzie takes aim at the district court's denial of his suppression motion. When looking at the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Russell*, 26 F.4th 371, 374 (6th Cir.

2022). Our review takes the evidence "in the light most likely to support the district court's decision" and we will "affirm on appeal if the district court's conclusion can be justified for any reason." *Id.* (alteration omitted) (quoting *United States v. Bateman*, 945 F.3d 997, 1005 (6th Cir. 2019)).

The district court denied McKenzie's motion on two grounds: first, because he didn't have standing to suppress the firearm found; and even if he did, the officers' search of the vehicle was reasonable.

Start with standing. Because the Fourth Amendment secures people against unreasonable searches and seizures "in *their* persons, houses, papers, and effects," U.S. Const. amend. IV (emphasis added), "Fourth Amendment rights are said to be 'personal.'" *Russell*, 26 F.4th at 374 (quoting *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)). As a result, "a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018).

To have a Fourth Amendment interest—or put another way, to have Fourth Amendment standing—the person claiming the constitutional violation needs to have "had a 'legitimate expectation of privacy in the premises' searched." *Id.* at 1526 (quoting *Rakas*, 439 U.S. at 143). But generally, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. The person moving for a suppression motion bears the burden "of establishing that *his own* Fourth Amendment rights were violated." *Id.* at 130 n.1 (emphasis added).

This issue comes up often, as it does here, when the passenger of a vehicle claims a Fourth Amendment violation. A passenger of a car he doesn't own, like McKenzie, doesn't have a

8

property interest in the car, so to show standing he must have a privacy interest. *See Byrd*, 138 S. Ct. at 1526; *Rakas*, 439 U.S. at 148–49. In *Rakas*, the Supreme Court held that passengers of a car could not challenge the reasonableness of a search. 439 U.S. at 148. But a passenger can challenge the *stop* of a vehicle. *See Brendlin v. California*, 551 U.S. 249, 255 (2007). This distinction matters. As a passenger, McKenzie cannot challenge the search of the vehicle, only the traffic stop. But to successfully challenge the traffic stop, McKenzie must show that the stop was invalid; that is, that the officers lacked probable cause. *See id.* at 256.[2]

An officer who observes a traffic violation has probable cause to stop the vehicle. *See United States v. Hughes*, 606 F.3d 311, 316–17 (6th Cir. 2010). The same is true for parking violations. *See United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003); *see also United States v. Burton*, 334 F.3d 514, 517 (6th Cir. 2003) (holding that violations of "local and state traffic laws" gave an officer probable cause to make a stop). At the suppression hearing, all three officers "testified consistently and convincingly" that the vehicle was parked more than 12 inches from the curb, in violation of Cleveland Municipal Ordinance § 451.04(a). *McKenzie*, 2021 WL 698614, at *4. Indeed, the government entered photographs into the record showing how far the vehicle was parked from the curb. *See id. & id.* at *1 n.2.

Although he doesn't make the argument as forcefully here on appeal, below McKenzie argued that the parking violation was just a pretext for the GIU to monitor gang activity. But that argument is unfounded. "Under the Fourth Amendment, officers may stop a car as long as they objectively have probable cause that an occupant of the car has committed a traffic offense, even

---

[2] We note that McKenzie's main issue on appeal is his challenge to the scope of his cross-examination of Sergeant Johnson. But it appears that his primary challenge to Sergeant Johnson's credibility goes to Sergeant Johnson's testimony about seeing the gun underneath the seat. That, of course, concerns the search of the car itself and not the initial stop. So even if the court erred on the cross-examination issue, it's not clear that McKenzie was prejudiced.

if they subjectively do so for a different reason." *United States v. Brooks*, 987 F.3d 593, 599 (6th Cir. 2021); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Because the officers had probable cause to perform an investigatory stop on the vehicle based on a violation of local traffic laws, the stop was valid. So McKenzie doesn't have standing to challenge the stop, let alone the search of the vehicle. But as the district court correctly concluded, even if McKenzie could challenge the search, he would still come up short.

The reasons for a traffic stop "may ripen into probable cause to search a vehicle based on the officer's interactions with the vehicle's occupants." *United States v. Lyons*, 687 F.3d 754, 769–70 (6th Cir. 2012). To determine whether probable cause existed, we look at the totality of the circumstances. *See United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993).

It's clear that the officers had probable cause to look into McKenzie's "lunge" area during the stop. He was acting erratically, with a young-looking woman not dressed for the weather. The vehicle was parked in an area known for gang activity. And McKenzie exited the vehicle against the officers' orders and was struggling against their efforts to handcuff him. For these reasons, the officers had reason to believe McKenzie posed a risk or had weapons by him. *See Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983). What's more, Sergeant Johnson didn't even perform a full "search." Rather, he saw the weapon in plain view. *See United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011).

In sum, even if McKenzie had standing to challenge the search, the search was reasonable.

## III.

The district court correctly denied McKenzie's motion to suppress.  He lacked standing to challenge the recovery of his weapon and, in any event, the search was reasonable.  The district court's judgment is affirmed.