NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0254n.06

Case No. 21-3379

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jun 24, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ANTHONY McMULLEN, | ) | OHIO |
| Defendant - Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: KETHLEDGE, STRANCH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Anthony McMullen contends that when he pleaded guilty to drug charges under a plea agreement, he got more than he bargained for. In the agreement, McMullen and the government agreed on an offense level, but left McMullen's criminal history category and final discretion over the sentencing range up to the district court. For its part, the district court found McMullen's criminal history to be higher than the parties expected because of his status as a career offender. And so the sentencing range also landed higher than the parties expected. Even after granting a significant downward variance, the district court sentenced McMullen to 168 months.

Now on appeal, McMullen argues for the first time that the district court should have vacated his guilty plea because the government breached the plea agreement by arguing for a sentence within the district court's Guidelines range. But because McMullen cannot show the district court plainly erred, we **AFFIRM**.

**I.**

After learning that McMullen was selling fentanyl, FBI agents and officers from the Akron Police Department placed him under surveillance. One day, officers saw McMullen briefly enter the passenger side of a vehicle before exiting. After pulling over the vehicle, officers found the driver in possession of 19 grams of carfentanil. So law enforcement obtained and executed three search warrants for addresses they knew McMullen stayed at. The searches bore fruit. All told, officers recovered 20.93 grams of carfentanil, more than $250,000, and drug paraphernalia.

A grand jury charged McMullen with one count of possession with intent to distribute ten or more grams of carfentanil, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Then the grand jury returned a superseding indictment charging the same count. The new indictment also alleged that McMullen committed the offense after a final conviction for a serious drug felony for which he served more than 12 months' imprisonment and was released within 15 years of the start of the instant offense.

McMullen signed a plea agreement with the government. In the agreement, he pleaded guilty to the sole count, acknowledging that the conviction carried a ten-year mandatory minimum. McMullen also agreed to forfeit the seized cash, as well as two vehicles he bought with proceeds from his criminal activity. The parties agreed on a sentencing calculation: a base offense level of 24, an adjusted offense level of 25 based on McMullen's prior conviction, an "anticipated criminal history category of V," and a three-level reduction for accepting responsibility. (R. 37, Plea Agreement, PageID #109.) But the plea agreement included some caveats. For instance, McMullen recognized that it would remain up to the district court "at the time of sentencing to determine whether a reduction for acceptance of responsibility is appropriate." (*Id.*) In the same vein, he understood that "sentencing rests within the discretion of" the district court, and that the court

would hand down a sentence "sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)." (*Id.*, PageID #107.) Further, McMullen agreed that the parties' recommendations wouldn't bind the district court, and it alone would decide the proper range under the Sentencing Guidelines. And relevant here, the parties had "no agreement about the Criminal History Category applicable in this case." (*Id.*, PageID #109.) Indeed, McMullen acknowledged that the district court would decide the criminal history after completion of the presentence report (PSR). Last, the government agreed to recommend a sentence within the Guidelines range "in accordance with the computations and stipulations set forth" in the plea agreement, and that neither party would recommend a departure or variance. (*Id.*, PageID #108.)

Despite the plea agreement, the PSR put things differently. For one, the report held McMullen accountable for another 74.24 grams of carfentanil by taking the money seized from his property and applying it to the street value of the drug—$3,500 a gram. But the increased drug amount didn't affect the total offense level calculation. Rather, the increased range was because of McMullen's criminal history—the report found McMullen to have a criminal history category of VI because he qualified as a career offender based on his prior felony convictions. So even after reducing three levels for acceptance of responsibility, the PSR calculated McMullen's offense level to be 34. That level resulted in a Guidelines range of 262 to 327 months.

Faced with the higher-than-anticipated range, at the first sentencing hearing, McMullen argued against his status as a career offender. But when that proved unsuccessful, McMullen said he was considering withdrawing his guilty plea, so the district court continued sentencing to a later date. Then McMullen moved to withdraw his guilty plea, or in the alternative continue sentencing again. But not long after, McMullen moved to withdraw his withdrawal, which the district court granted.

At the final sentencing hearing, McMullen raised several objections to the PSR. The crux of McMullen's argument was that he negotiated with the government in good faith, accepted responsibility, and forfeited a great deal of money. To that end, McMullen asked the district court to deviate from the Guidelines and hand down a sentence closer to what the plea agreement would have called for. In doing so, McMullen conceded that he was a career offender and was simply asking for a variance rather than contesting that finding. After acknowledging the ten-year mandatory minimum sentence contemplated by the plea agreement, McMullen asked for a sentence between 110 and 137 months.

The district court found the plea agreement to be a little inconsistent. On one hand, the parties agreed to an offense level and to not seek departures or variances. But on the other hand, the parties agreed that the ultimate sentencing decision was left up to the court. So when the government requested a within-Guidelines-range sentence, the district court pushed the government to clarify which sentence it was seeking—either one within the Guidelines range as contemplated by the plea agreement or one within the Guidelines range that the PSR set out. The government countered that the language in the plea agreement made clear that the parties would recommend a sentence within the range calculated by the PSR, and that the plea agreement only agreed to an offense level calculation based on the quantity of drugs. The government stressed that it was not trying "to contravene the plea agreement," but that it read the agreement as requiring a recommendation within the range calculated by the PSR. (R. 72, Sentencing Tr. II, PageID #299.) All in all, the government did just that and sought a sentence between 262 and 327 months.

Satisfied, the district court agreed that it needed to start with the total offense level of 34 and the criminal history category VI, and then consider the § 3553(a) factors. Although the court didn't get into an extended conversation of any one factor, it considered arguments from both

parties. In the end, it varied downward and sentenced McMullen to 168 months' imprisonment, well below the Guidelines range. Neither party objected. McMullen timely appealed.

## II.

## A.

On appeal, McMullen argues for the first time that the government breached its plea agreement by not asking for a sentence within the range set out in the agreement. And so, his argument goes, the district court erred in not vacating McMullen's guilty plea sua sponte.

Because McMullen did not object to the government's alleged breach of the plea agreement before the district court, we review for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Keller*, 665 F.3d 711, 714 (6th Cir. 2011). Under this review, there first must be an error that is plain and affects substantial rights. *United States v. Russell*, 26 F.4th 371, 376 (6th Cir. 2022). If those conditions are met, we can grant relief, but only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation and alterations omitted). "Plain error is, as it should be, a difficult hurdle to clear." *United States v. White*, 920 F.3d 1109, 1114 (6th Cir. 2019).

## B.

Here, McMullen's argument fails because even if the government breached the plea agreement, that breach wasn't so obvious that it was "plain" error. Under plain-error review, we can only correct errors that are "clear under current law." *United States v. Davis*, 970 F.3d 650, 665 (6th Cir. 2020) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). And based on the agreement's language and our caselaw, it's not "clear under current law" that the government breached the agreement. *Id.*

We start with the agreement itself. Like contracts, the parties' understanding of a plea agreement is best understood through the agreement's plain language. *See United States v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993). The plea agreement's plain language on the final sentencing is clear.

> Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the advisory guideline range under the Sentencing Guidelines, whether there is any basis to depart from that range or impose a sentence outside the advisory guidelines range, and what sentence to impose.

(R. 37, Plea Agreement, PageID #108.)

But McMullen doesn't challenge the district court's ultimate sentencing decision. Rather, he claims that the government breached the plea agreement by seeking a sentence within the Guidelines range that the PSR recommended and that the district court found to be proper. That range, however, was higher than the range that would have applied had the offense level as contemplated by the plea agreement been used.

The agreement states that "[n]either party will recommend or suggest in any way that a departure or variance is appropriate." (R. 37, Plea Agreement, PageID #108.) McMullen's argument turns on whether the parties agreed not to recommend any sentence that deviated from the plea agreement's contemplated sentencing range. On this point, there's agreement language cutting both ways.

To be sure, the government agreed to recommend a sentence "pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations set forth below." (*Id.*) But the agreement made clear that while the parties agreed on an offense level, no agreement existed as to criminal history except that the district court would decide it. Indeed, the district court noted that the disparity between the advisory sentencing range in the plea agreement and in the

PSR was because of the career offender enhancement and criminal history, not because of the drug quantity. So the agreement contemplated that the criminal history category could differ from what the parties expected. And McMullen himself conceded he qualified as a career offender.

But even putting the criminal history category aside, the stipulated total offense level the parties agreed to (25) was lower than the ultimate total offense level that the PSR recommended and that the court used because of the career offender enhancement under U.S.S.G. § 4B1.1(b)(1). So by recommending a sentence of 262 to 327 months, the government perhaps breached the agreement.

On the other hand, some of the agreement's language supports the view that the agreement contemplated some enhancements beyond the stipulated computation. Although the agreement acknowledged only one prior felony conviction, McMullen agreed that the government "set[] forth *at least one* prior serious drug felony convictions(s)" and he waived "any challenge to the prior conviction(s) and sentencing enhancement." (R. 37, Plea Agreement, PageID #104-05 (emphasis added).)

All in all, the government may or may not have breached the plea agreement when it argued for a within-Guidelines sentence higher than the sentence contemplated by the plea agreement. But because McMullen didn't argue a breach below, plain-error review obviates the need for us to answer that question here.

Even if we were convinced that the district court erred by not finding that the government breached the plea agreement, such an error was not plain or clear. McMullen cites no caselaw that

addresses his precise claim. To its credit, in its briefing the government cites cases from other circuits that it argues show divided authority on the point.[1]

So for either reason—a lack of binding caselaw or a possible circuit split—we are precluded from finding that any error was plain. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).

## III.

Any error the district court may have made was not plain. As a result, we need not go further in our plain-error review. The district court's judgment is affirmed.

---

[1] *Compare United States v. Leach*, 491 F.3d 858, 864 (8th Cir. 2007) (holding that the government didn't breach when the agreement did not stipulate to the criminal history category and did not mention potential adjustments), *and United States v. Traugott*, 364 F. App'x 925, 925 (5th Cir. 2010) (finding that a stipulation to the appropriate Guidelines section didn't preclude application of the career offender enhancement), *and United States v. Flint*, 142 F. App'x 435, 438 (11th Cir. 2005) (concluding that the parties only agreed on a base offense level rather than a total offense level), *with United States v. Roberts*, 624 F.3d 241, 246 (5th Cir. 2010) (declining to follow *Traugott* because Roberts didn't receive notice that the enhancement might apply), *and United States v. Fowler*, 445 F.3d 1035, 1038 (8th Cir. 2006) (holding that the government breached by recommending the PSR's range rather than the agreement's).