NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0314n.06

Case No. 20-4148

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) | Aug 02, 2022 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| SHAWN SUMMERS, | ) |  |
| Defendant - Appellant. | ) | OPINION |

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. After a domestic dispute, Shawn Summers left his residence with a gun and fired it multiple times in a residential area. He was arrested and charged with being a felon in possession. At sentencing, the district court varied upward five levels, changing Summers's offense level from 17 to 22. But as it did so, the court's description of its actions didn't match the sentence. The district court stated that it varied upward "four levels," instead of five. Summers appealed. We agreed the math didn't add up and remanded for clarification. Sticking by its sentence, the district court explained that it merely misspoke, not miscalculated, when it said "four levels" instead of five.

Summers appealed again. This time he challenges the procedural and substantive reasonableness of his sentence. For the reasons below, we affirm.

**I.**

One September afternoon in 2019, Summers and his fiancée got into an argument. As the fight escalated, Summers threw objects through the window of their home. Worse yet, he then stormed outside and fired his gun in the air and then marched down the street and fired a few more rounds for good measure. Terrified, a few of his neighbors alerted authorities. Police arrested him a short time later and recovered the loaded gun and another loaded magazine.

This wasn't Summers's first arrest. Years before, he had spent five years in prison for an aggravated burglary conviction that involved the use of a firearm. This old conviction made him a felon in possession, and a federal grand jury charged him accordingly under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Summers pleaded guilty. His plea agreement included three relevant provisions: (1) an agreed upon offense level of 17; (2) a pact that neither the government nor Summers would suggest a departure or variation from the applicable Guidelines range; and (3) Summers's reservation of his right to appeal an above-Guidelines sentence.

The Probation Office took the parties' agreement into account in its presentence report (PSR). That report, too, recommended an offense level of 17. It then set Summers's criminal history category at III. Together, the offense level and criminal history landed Summers a Guidelines range of 30-to-37 months. But in the Probation Office's view, this range didn't account for the seriousness of Summers's crime. So it laid out two avenues the district court might use to impose a higher sentence. The first: an upward departure based on Summers's use of a firearm during the offense. *See* U.S.S.G. § 5K2.6. The second: an upward variance based on the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a).

This brings us to the sentencing hearing, which the district court held by video at Summers's request. Following the PSR, the district court took the offense level of 17, criminal

history category of III, and acceptance of responsibility into account, which resulted in a Guidelines range of 30-to-37 months' imprisonment. The district court then moved onto the PSR's recommendation that it depart or vary upward. Despite referencing the departure provision—U.S.S.G. § 5K2.6—the district court stressed that any upward movement would be "a variance, even though [the PSR] reference[d] [] the Guidelines." (R. 38, Sent'g Hrg. Tr., PageID 172.) After it described the recommendation, the district court allowed both parties to present arguments.

Consistent with the plea agreement's provision that the parties stick to the relevant range, Summers, his counsel, and his fiancée all spoke and argued for a sentence at the low end of the range. But the government pushed back, arguing that this wasn't a regular felon-in-possession charge because it involved firing a weapon in a residential area. In the government's eyes, those facts, along with Summers's previous gun-crime conviction, warranted a high-end Guidelines sentence.

With all arguments on the table, the district court set Summers's sentence. It started with the 18 U.S.C. § 3553(a) factors. It considered the facts, then Summers's criminal history and his other characteristics, as well as the nature of the crime and the need to protect the public. With this background in mind, the district court decided to "follow" the "probation department's recommendation," increased the offense level from 17 to 22, and imposed a sentence of 63 months' imprisonment. (*Id.* at PageID 190–92.) Although it referenced U.S.S.G. § 5K2.6 in passing, the district court called the sentence a "substantial" "four-level upward variance." (*Id.* at PageID 191–192.) Summers objected to the upward variance but nothing else.

Summers filed his first appeal, arguing that the district court miscalculated his Guidelines range when its actions (applying a five-level variance) didn't match its words (mentioning a four-

level variance). The government didn't fight the appeal, asking instead that we remand so the district court could clarify its calculation. We granted its request.

On remand, the district court clarified that its "four-level" remark was a "misstate[ment]," not a miscalculation. (R. 41, Order, PageID 201.) As proof, the district court pointed out that it committed to following the PSR's recommendation of a five-level variance and 63-month sentence.

Summers appealed again.

## II.

In this round, Summers challenges the procedural and substantive reasonableness of his sentence. We consider each in turn.

## A.

We review Summers's procedural-reasonableness arguments first. "A district court's sentencing decision should explain how and why it arrives at a sentence." *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). So as a matter of procedure, a district court must calculate the proper Guidelines range, weigh the permissible § 3553(a) factors, and give an adequate explanation for why it chose the sentence. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).

Summers makes several procedural arguments for the first time on appeal. He contends that the district court miscalculated his sentence and then erred when it released an order rather than holding a rehearing on remand; created confusion about whether it was applying a departure or variance; and violated his procedural rights when it held the sentencing conference over video call. Because he makes these arguments for the first time on appeal, we review for plain error. *United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019).

Under this standard, Summers must show an error that is plain and affects substantial rights. *United States v. Russell*, 26 F.4th 371, 376 (6th Cir. 2022). If he does so we can grant relief, but only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration and citation omitted). "Plain error is, as it should be, a difficult hurdle to clear." *United States v. White*, 920 F.3d 1109, 1114 (6th Cir. 2019). As a result, we will find plain error "only in exceptional circumstances and only where the error is so plain that the trial judge . . . w[as] derelict in countenancing it." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (quoting *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994)).

*The Miscalculation.* Summers contends the district court miscalculated his sentence. As evidence, he points to the discrepancy between the district court's five-level increase and its "four-level" statement. But as the remand made clear, no error (much less a plain one) occurred.

To start, the district court followed the Probation Office's recommendation to a tee. That recommendation suggested varying upward from an offense level of 17 to 22 and imposing a 63-month sentence. At the sentencing hearing, the district court announced it would adopt this recommendation. And its sentence aligns perfectly. Indeed, the district court mentioned an offense level of 22 several times. Of course, its statement that it would apply a "four-level upward variance" may have muddied the waters a bit. But that's why we remanded. And on remand, the district court clarified that it meant to vary upwards five levels—just as the Probation Office recommended. Weighing its clarification and the whole of the transcript against the "four-level" statement, we conclude no miscalculation occurred.

At most, the district court misstated one part of its sentence. But this slip of the tongue doesn't amount to an error, much less a reversible one. And without a miscalculation, no resentencing hearing was necessary. *See* 18 U.S.C. § 3742(f)(1) (requiring an appellate court to

remand for resentencing only when the district court's sentencing was "in violation of law or imposed as a result of an incorrect application of the sentencing guidelines"); *cf. United States v. Nichols*, 897 F.3d 729, 738 (6th Cir. 2018) (acknowledging district courts' discretion when imposing a corrected sentence to do so with "a brief order, a hearing that resembles a de novo sentencing proceeding, or anything in between" so long as the corrected sentence is "procedurally and substantively reasonable").

*The Variance.* Next, Summers claims the method the district court used to impose the upward variance "[was] abnormal and unclear." (Appellant Br. at 15.) To back up his claim, he points to the instances when the district court mentioned both the departure and variance as reasons for the higher sentence.

In some cases, we have found procedural error when the district court's reasoning left us unsure "whether [it] intended to grant a Guidelines departure or variance." *United States v. Grams*, 566 F.3d 683, 687 (6th Cir. 2009) (per curiam). Here, no such plain error occurred. True, the district court referenced the U.S.S.G. § 5K2.6 departure and the Guidelines at various points during the hearing. But the first time it did so, it described the PSR's recommendation for the parties. After that, it mentioned the Guidelines twice more—once to explain that the Guidelines would support an increase and once to summarize its explanation. Compare those three references to the district court's repeated assertions that it imposed a variance, not a departure, and it becomes clear that the district court intended to impose a variance. Early on, the district court stressed that if it imposed an above-Guidelines sentence "it would be a variance"—just like the PSR recommended. (R. 38, Sent'g Hrg. Tr., PageID 172.) After that, it made repeated references to its "substantial upward variance." (*Id.* at PageID 192.)

What's more, Summers's counsel understood the district court to impose a variance at the hearing. (*See id.* at PageID 173 ("I appreciate you bringing the attention of the potential for an upward variance."); *id.* at PageID 193 ("No objections other than the upward variance objection, Your Honor.").) So viewed as a whole, the record makes clear that the district court imposed a variance. For this reason, no plain error occurred.

*The Video Conference.* Recall that Summers *requested* that the district court conduct his sentencing hearing through a video call. (R. 26, Minutes, PageID 118.) Despite this request, Summer now contends that the video conference violated his rights because it made "private attorney-client communication impossible" and may "hinder parties from effectively confronting witnesses and presenting evidence." (Appellant Br. at 23.) The government argues that by requesting and consenting to video sentencing, Summers waived his ability to challenge the video sentencing. True, "waiver is the intentional relinquishment or abandonment of a known right," and we thus do not consider waived arguments. *United States v. Sheppard*, 149 F.3d 458, 461 n.3 (6th Cir. 1998).

But it appears that Summers isn't objecting to the use of video per se, just that the video technology hindered his ability to communicate effectively with his counsel. So we don't think he waived this challenge. In any event, when the district court asked if Summers had any objections, his counsel raised only one (not to the video) and then Summers spoke to the court as well. Because Summers didn't object to the video shortcomings below, we review for plain error.

Summers's main point is that he and his counsel didn't have a separate line to communicate privately. As his only support, Summers disingenuously quotes from the hearing when his counsel said, "But I can't talk to my client because of video." (Appellant Br. at 23.) But that quote omits the last part of the sentence: "But I can't talk to my client because of video, but it's obvious that

he wants to make some statement, Judge." (R. 38, Sent'g Hrg. Tr., PageID 193.) The court then let him do just that. So it's not clear what rights, if any, the video deprived Summers of.

Summers also offers up skeletal claims about confronting witnesses and presenting evidence, two things not relevant to his sentencing hearing. And he does so without citing any caselaw.

We find no error with the district court's use of video during sentencing.

**B.**

Finding the sentence procedurally sound, we now turn to Summers's challenge to the substantive reasonableness of his sentence. The "touchstone" of our substantive review is "whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). We conduct this review for an abuse of discretion. *United States v. Robinson*, 892 F.3d 209, 213 (6th Cir. 2018). But because the district court's consideration of the § 3553(a) factors "is a matter of reasoned discretion, not math," we are "highly deferential" in our review. *Rayyan*, 885 F.3d at 442.

Summers contends that his sentence was "greater than necessary" to achieve the sentencing goals of the § 3553(a) factors. In particular, Summers argues that the district court focused too much on some factors—like the nature of the crime and his criminal history—and not enough on others—like sentencing disparities and mitigating factors like his personal characteristics. He even accuses the district court of not considering "all of these critical factors." (Appellant Br. at 27.)

The record rebuts his claim. The district court discussed the nature of the crime, Summers's history and characteristics, his criminal history, his family, his substance abuse, his education, the sentencing disparity, and the need to protect the public from gun violence. Then, in explaining its upward variance, the district court reasoned that Summers's record with guns and his dangerous

decision to fire one in a residential area justified a higher sentence. "We see no basis for second guessing" the district court's explanation of its upward variance based on the § 3553(a) factors. *Rayyan*, 885 F.3d at 443.

At bottom, Summers's argument "boils down to an assertion that the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). But as we've explained before, that's not our job. *See id.* The district court's discussion was comprehensive and far from an abuse of discretion.

## III.

We are unpersuaded by the challenges to the procedural and substantive reasonableness of the sentence. The district court's sentence is affirmed.