RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JUAN R. GROGAN,

*Defendant-Appellant*.

> No. 22-3651

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Akron.
No. 5:21-cr-00085-1—Donald C. Nugent, District Judge.

Argued:  October 10, 2024

Decided and Filed:  March 27, 2025

Before:  WHITE, STRANCH, and NALBANDIAN, Circuit Judges

─────────────────

## COUNSEL

**ARGUED:**  Tyler Becker, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant.
Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.
**ON BRIEF:**  Tyler Becker, Harsha Sridhar, WILLIAMS & CONNOLLY LLP, Washington,
D.C., for Appellant.  Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland,
Ohio, for Appellee.

─────────────────

## AMENDED OPINION

─────────────────

NALBANDIAN, Circuit Judge.  A jury convicted Juan Grogan of possessing a firearm as
a felon, possessing a firearm in furtherance of drug trafficking, and possessing fentanyl with
intent to distribute.  At trial, the judge allowed the government to admit testimony about a series
of statements that Grogan made during a proffer session.  The statements concerned his

ownership of drugs, a firearm, and a wallet, and his involvement in a shooting and a kidnapping. On appeal, Grogan argues the admission of this evidence was an error.

Under the proffer agreement, the government could introduce a particular statement from the proffer session if Grogan testified or presented arguments inconsistent with that statement. Grogan contends admission of the evidence was an error because neither of these conditions were met. We agree with him that at least some of these statements should not have been admitted. And because the error was not harmless, we REVERSE.

## I.

On February 18, 2021, a grand jury indicted Grogan on three counts: possession of fentanyl with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and possession of a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Law enforcement originally investigated Grogan based on two incidents. The first began as a verbal altercation in an Autosport Plus store and led to a car chase during which shots were fired. The other was a kidnapping. But Grogan's trial concerned his possession of drugs and a firearm found in his Dodge Journey, not the kidnapping or the shooting.

Agents discovered the drugs and firearm during an inventory search on December 7, 2020. While surveilling Grogan in relation to the shooting and kidnapping, Detective Kyle Evans saw Grogan drive the Dodge Journey to a house, leave for about an hour, and then return. Grogan was the only person he saw go in or out of the car. Evans then waited for other agents to arrive before approaching the home to execute an arrest warrant for Grogan. Grogan's then-girlfriend, J'Leshia Pope, lived in the home. She testified that when the officers arrived in search of Grogan, he jumped out of the window and ran away. She identified Grogan's Dodge Journey as the car he drove on that day and said that she had not seen anyone else drive it.

After Grogan fled, the agents impounded the car. During an inventory search, they found a handgun on the floorboard. They also found a digital scale, plastic baggies, and a mix of heroin and fentanyl inside a box in the center console. Agents also discovered a money order

receipt with Grogan's name on it and a wallet with two driver's licenses belonging to Grogan. Grogan's DNA was found on the firearm, along with the DNA of at least two unknown individuals. He was arrested three days later and gave no statements to law enforcement at the time of arrest.

Several weeks later, Grogan agreed to speak with investigators, including Detective Michael Volpe. They held a proffer session in which Grogan, accompanied by counsel, agreed to provide information to the government. And the government agreed to evaluate the information to consider a plea deal, although it made no promises. Grogan and investigators discussed his actions on the day of the inventory search, the items found in the car, the Autosport Plus incident, and the kidnapping.

Grogan signed a proffer agreement outlining when the government could use the information he gave for impeachment or as substantive evidence:

> Impeachment and Rebuttal Use. If your client testifies inconsistently with the proffer or otherwise presents offers or elicits evidence or asserts facts or theories inconsistent with the proffer at any trial, sentencing, or other legal proceeding, the Government may use the proffer to cross-examine your client. Moreover, the proffer may be used for impeachment or as substantive evidence to rebut any evidence or argument inconsistent with the proffer offered by -- or on behalf of your client . . . at any trial, sentencing, or other legal proceeding. These provisions are necessary to ensure that no court or jury is misled by receiving information inconsistent with that provided by your client in the proffer.

R.94, Trial Tr., pp.424–25, PageID 805–06.

Grogan and the government did not reach a plea deal. So the parties began preparing for trial. Before trial, Grogan moved to suppress the evidence agents obtained during the Dodge Journey inventory search. He challenged the arrest warrant against him for lacking factual and legal justification and the car search for lacking reasonable suspicion. The district court disagreed and denied the motion. The case then moved forward to trial.

Grogan testified against the advice of his lawyer. Grogan's strategy was to relitigate the motion to suppress, attacking the government's warrants and challenging the sufficiency, quality, and credibility of their evidence. He argued that the government had no basis for investigating

him on December 7. He testified that he "was not involved in" the kidnapping and detailed the incident. R.94, Trial Tr., p.401, PageID 782. Referring to the kidnapping victim, Grogan said, "I don't even know this boy." *Id.* at p.402, PageID 783. As for the Autosport Plus incident, Grogan testified that the incident "did not involve me," and "I didn't have anything to do with that situation." *Id.* at p.404, PageID 785. Grogan also called Pope "very dishonest," and referenced text messages "that would discredit her testimony." *Id.* at p.396, PageID 777.

On cross-examination, Grogan admitted to driving the Dodge Journey on the day of the search, explaining that he borrowed the car from his cousin. When the government asked Grogan if he jumped out the window of Pope's home, he invoked the Fifth Amendment. When the government asked if the firearm and drugs were his, Grogan again invoked the Fifth Amendment. In response to the invocations, the government replied, "Okay" twice and "Okay. That's fine." *Id.* at pp.407, 416, PageID 788, 797.

Grogan also said, referencing the kidnapping, "I could prove that I wasn't involved in anything." *Id.* at p.415, PageID 796. After cross-examination, Grogan said about the Autosport Plus incident, "I was just literally a standby-er, and I didn't have anything to do with that incident." *Id.* at p.419, PageID 800.

To rebut Grogan's testimony, Detective Volpe testified about Grogan's statements during the proffer session. According to Detective Volpe, Grogan admitted that he jumped out of Pope's window as police approached the home, and that the wallet, firearm, and drugs in the car were his. Grogan also admitted to driving the Dodge Journey in chase of a red pickup truck after an argument at the Autosport Plus store, while another man shot at the pickup truck from the vehicle's passenger window. The firearm used in this incident was the same firearm that police later recovered in the vehicle.

According to the proffer, Grogan said "he loaned his Dodge Journey to Chance Young to be used in the kidnapping," the week before the search because of a debt that "Mr. Grogan owed Chance Young." *Id.* at p.434, PageID 815. Detective Volpe also said that the kidnapping involved four people, and two of them had been prosecuted for their roles in the kidnapping.

Grogan was found guilty on all three counts.  The court sentenced him to a total term of imprisonment of 185 months.  Grogan timely appealed.  He now challenges the trial court's admission of his proffers.

## II.

## A.

A statement made during plea negotiations is ordinarily not admissible at trial.  Fed. R. Evid. 410.  But a defendant can agree "to waive the exclusionary provisions of the plea-statement Rules."  *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995).  For example, a defendant can consent to the government's use of his proffer statements in court if he offers inconsistent evidence.  *See United States v. Shannon*, 803 F.3d 778, 783 (6th Cir. 2015).

This court takes a two-step approach to deciding whether the district court properly admitted a proffer.  First, we interpret the proffer agreement de novo.  *Id*.  Second, if the proffer agreement applies, we "review for abuse of discretion the district court's evidentiary rulings admitting [the] proffer statements, and we will not reverse unless an error affects a 'substantial right.'"  *Id*. (quoting *United States v. Barrow*, 400 F.3d 109, 117 (2d Cir. 2005) (further citation and quotation marks omitted)).  So we review de novo the kind of inconsistency the proffer agreement requires, but otherwise review the evidentiary ruling for abuse of discretion.  *See id*. at 783.

Both parties agree that Grogan approved of a partial waiver of Rule 410 objections, and Grogan does not challenge the validity of the proffer agreement per se.  Rather, Grogan argues that the government could not introduce his proffers at trial because Grogan did not testify inconsistently or present evidence or arguments that contradicted his proffer.  The government has two theories in response: first, it contends, with respect to some statements, that Grogan testified inconsistently when he invoked the Fifth Amendment at trial; second, it argues, for all the evidence, that specific statements and arguments made during the trial contradicted his proffers.  We reject the government's first theory.  On the second, we find that only one of Grogan's trial statements contradicted his proffers under the agreement.

Statements are inconsistent "only if the truth of one implies the falsity of the other." *Shannon*, 803 F.3d at 785 (quoting *United States v. Krilich*, 159 F.3d 1020, 1025–26 (7th Cir. 1998)). Impeaching a witness or "questioning his credibility and accuracy" is not necessarily inconsistent with a defendant's earlier admission of guilt. *Id.* But impeachment crosses into inconsistent testimony when a defendant tries to create a contrary factual inference. *Id.* at 786.

**B.**

We now consider the proffer admissions individually starting with the most important, which is Grogan's admission that he owned the drugs in the car.

**1.**

The government contends that Grogan's invocation of the Fifth Amendment and refusal to answer the government's question about whether he owned the drugs conflicted with his proffer statement. Recall that when the prosecution specifically asked Grogan whether the drugs were his, he refused to answer—invoking the Fifth Amendment. The government says that Grogan's invocation of the Fifth Amendment amounted to a specific denial that he owned the drugs. And according to the government, this means that Grogan "testified" inconsistently with his proffer statement on the drug ownership.

So the question is whether invoking the Fifth Amendment implies the falsity of a prior admission. We think the answer is no. For one, a defendant's *refusal* to testify has no factual content that could contradict a purportedly different factual statement. Grogan wasn't making a factual statement. It's true that Grogan invoked the Fifth Amendment in response to the government's specific factual question. But this means only that the government's argument depends on drawing an inference or implication from Grogan's invocation.

And, simply stated, the Supreme Court has told us that "no inferences whatever can be legitimately drawn" from invoking the Fifth Amendment. *Johnson v. United States*, 318 U.S. 189, 196–97 (1943) (noting a defendant "might well be entrapped if his assertion of the privilege could then be used against him"); *see also DePew v. Anderson*, 311 F.3d 742, 750 (6th Cir. 2002) ("As a general matter, a comment by the prosecution on a defendant's failure to testify

violates the Fifth Amendment." (citing *Griffin v. California*, 380 U.S. 609 (1965))). It's true that these cases were decided in a different context than this one, but we see no meaningful difference in the application of the principle here.

The inference is also backward here. Usually, when a defendant pleads the Fifth Amendment, the inference that we are concerned with is that the jury will infer guilt. *See Griffin*, 380 U.S. at 614 (noting the accused's refusal to answer a question accords with guilt and is often interpreted by a jury in that way even if the state cannot draw the same inference); *Combs v. Coyle*, 205 F.3d 269, 281–82 (6th Cir. 2000). In other words, by invoking the Fifth Amendment, a jury may naturally infer that Grogan was admitting that the drugs were his. But that's what he said in his proffer. So even if we could draw that inference, it would show consistency—not inconsistency as the government alleges. In any event, no inference can be drawn. *See Johnson*, 318 U.S. at 196. So by invoking his Fifth Amendment right in response to the government's questioning, Grogan did not contradict his proffer statement and its admission on that ground was improper.

To avoid this conclusion, the government argues that Grogan waived his Fifth Amendment privilege against self-incrimination by testifying. But whether Grogan properly invoked the Fifth Amendment only matters for whether the district court could compel him to answer, not whether invoking the right provides inconsistent factual content in our context. Indeed, Grogan's invocation of the Fifth Amendment is what the government now contends permitted the introduction of his proffer on the drugs.

Regardless, the government forfeited any objection to Grogan invoking his Fifth Amendment right when it didn't raise the issue at trial. *United States v. Russell*, 26 F.4th 371, 375 (6th Cir. 2022) (finding the "government's failure to raise [an] argument below was…a forfeiture" when the government raised the issue for the first time in its opening brief on appeal). In fact, the government arguably consented to Grogan's invocation at trial by responding "Okay." and "Okay. That's fine." R. 94, Trial Tr., pp.407, 416, PageID 788, 797. The government now tries to reframe these responses as "merely acknowledg[ing] that Grogan had asserted the privilege." Appellee Br. at 16 n.2. In any event, the government forfeited the argument by failing to raise it before the trial court. *See Russell*, 26 F.4th at 375.

We may review a forfeited issue for plain error. *Id.* at 374. But the government's argument still fails. To succeed, "the government must show that the forfeited error was clear and affected its substantial rights." *Id.* at 376 (citing *United States v. Olano*, 507 U.S. 725, 733–34 (1993)). The government argues the district court erred in allowing Grogan to invoke the Fifth Amendment because when a defendant testifies, he cannot claim to be immune from cross-examination on a matter he has elected to put in dispute through his direct testimony.

But Grogan did not put his proffers in dispute through his direct testimony. Grogan's direct focused on discrediting the government's warrants and its basis for investigating him. On cross, Grogan invoked the Fifth Amendment only after he was asked about his ownership of the drugs, evasion of police, and ownership of the firearm. So even if the government is correct that Grogan cannot invoke the Fifth Amendment on matters he put in dispute, there was no plain error because that did not happen. Grogan did not put his proffers in dispute.

**2.**

Beyond Grogan's invocation of the Fifth Amendment, the government points to some of Grogan's direct testimony as being inconsistent with his proffer on the drug ownership. Again, the government can show inconsistency by demonstrating that Grogan's evidence or arguments at trial "implie[d] the falsity" of his proffers. *Shannon*, 803 F.3d at 785. The government points to Grogan's testimony stating:

> However, once again, they are presenting to the Court that I'm a drug dealer and I'm a felon in possession of a firearm when the Government can't prove how they became in possession of this firearm to even have knowledge of me being involved in anything that they're presenting in court today.

R.94, Trial Tr., pp.395–96, PageID 776–77. According to the government, this statement amounts to an implicit denial that he possessed a firearm and owned the drugs found in the car. Although it's close, we disagree. Recall that Grogan's testimony primarily tried to undermine the sufficiency and reliability of the government's evidence generally, not the accuracy of the specific facts. And his main strategy was to try to question the integrity of the searches themselves.

To that end, he questioned how the government had the firearm (which came from the search of the car) and how it got any inkling that he participated in any criminal activity in the first place. But his statement does not deny his drug dealing, his felon status, or his possession of a firearm or drugs. Grogan's statement speaks only to the sufficiency of the proof against him and "the government's responsibility to prove every necessary element of the offenses charged." *United States v. Wood*, 780 F.2d 555, 557 (6th Cir. 1986).

So the issue comes down to this—does questioning whether the government can prove that you did something amount to a denial that you did it? The Second Circuit has said no, and we agree. *See United States v. Rosemond*, 841 F.3d 95, 110 (2d Cir. 2016). There, like here, a proffer agreement allowed the government to introduce the defendant's proffer statements if he, either directly or impliedly, made "a factual assertion at trial that contradicts a statement made during the proffer session." *Id*. at 107. The defendant was on trial for murder and argued the government had failed to prove his intent to murder the victim. *Id*. at 110. The court held this sufficiency argument did not contradict the defendant's proffers and trigger their admission. *Id*. To hold otherwise, the court explained, "would prevent defense counsel from challenging the Government's lack of evidence on a particular element, even where the Government failed to introduce *any* evidence on a certain element." *Id*. at 108 (internal quotation marks omitted).

We agree. This view accords with *Shannon*, which distinguished between statements questioning the "credibility and accuracy" of another witness's testimony from statements that denied a defendant's guilt. 803 F.3d at 785. While the latter contradicts a proffer statement, the former does not. *See id.* The Second Circuit in *Rosemond* compared sufficiency arguments to credibility arguments, explaining that "[s]uch attacks do[ ] not necessarily imply that the event did not occur, only that the witness may not have seen or reported it accurately, and thus primarily implicate the Government's burden of proving each element beyond a reasonable doubt." 841 F.3d at 108 (second alteration in original) (internal quotation marks omitted). Grogan's testimony that Pope was "very dishonest" is another example of him questioning the credibility and accuracy of her testimony. R. 94, Trial Tr., p.396, PageID 777. But it does not rise to the level of contradicting his proffers.

Because Grogan neither made statements nor offered arguments inconsistent with his proffer that the drugs belonged to him, the trial court's admission of the proffer statement was improper and an abuse of discretion.

## C.

Grogan also points to five other proffers he claims the trial court erred in admitting: (1) that Grogan owned the firearm found in the borrowed car; (2) that Grogan jumped out of Pope's window when he saw police coming; (3) that Grogan owned the wallet found in the same car; (4) that Grogan's firearm was used in the shooting; and (5) that Grogan loaned the car "to be used in [a] kidnapping." R. 94, Trial Tr., pp.427–34, PageID 808–15.

***Proffers 1 & 2.*** Grogan invoked the Fifth Amendment when the government asked if he owned the firearm and if he jumped out of Pope's window. For the reasons outlined above, Grogan's invocation of the Fifth Amendment is not inconsistent with his proffer statements. So admission of these statements was improper.

***Proffer 3.*** In his proffer, Grogan admitted the wallet found in the Dodge Journey belonged to him. When asked about the wallet at trial, Grogan first said that "[t]he Government was in no position to be in that vehicle." R. 94, Trial Tr., p.407, PageID 788. When the government continually asked about the wallet, Grogan returned to his contention that the agents obtained it wrongfully, noting that the "wallet was not entered into the inventory report," that he had an "expectation of privacy in that vehicle," and that "the evidence that the Government is presenting is insufficient." *Id.* at p.409, PageID 790. Eventually, Grogan admitted that the driver's licenses in the wallet were his.

Again, Grogan's statements question the sufficiency of the government's evidence but do not amount to a denial that he owned the wallet. If anything, his admission that his driver's licenses were in the wallet accords with his proffer. Grogan undeniably evaded the questions about the wallet, but evasion does not amount to inconsistency. So admission of this proffer was also improper.

*Proffer 4.* At trial, Grogan claimed the Autosport Plus shooting "did not involve" him and that he "didn't have anything to do with that situation. Not one part." *Id.* at p.404, PageID 785. Later, Grogan clarified that he "was operating a Dodge Journey vehicle" during the Autosport Plus incident but contended that "the government has failed to inform the jury that [he] was not the participant of the actual incident that occurred." *Id.* at pp.418–19, PageID 799–800. Grogan continued that he "was literally a standby-er" and "didn't have anything to do with that incident." *Id.* at p.419, PageID 800. But in his proffer, Grogan admitted he was present at the store during the verbal altercation, that he drove the car, and that he followed the other car while his passenger discharged the firearm.

Grogan's testimony that he was "not involved" contradicts this proffer. Grogan argues this inconsistency was cured by his clarification that he was not involved in the *shooting*. We disagree. This statement—which minimized his involvement to that of a mere "standby-er"—contradicts his proffer statement, where he confirmed his active involvement in the car chase while his passenger used his firearm to assault the other driver. The admission of this proffer statement was not an abuse of discretion.

*Proffer 5.* In his testimony, Grogan also claimed he was "not involved in" the kidnapping and "[didn't] even know" the victim. R. 94, Trial Tr., pp.401–02, PageID 782–83. Grogan questioned the government's evidence of the kidnapping by challenging the judge's signature on the warrant, the police report it was based on, and an "impermissibly suggest[ive]" photo array done with the victim. *Id*.

The government argues this testimony contradicted Grogan's proffer that he loaned his borrowed car to one of the kidnappers to be used in the crime as repayment for a debt owed to the kidnapper. It also argues Grogan's testimony contradicted his proffer that the kidnappers knew someone who had burglarized them and wanted Grogan to go with them to look for the suspect, but Grogan refused and allowed them to use his car instead. But Grogan's statements at trial are not inconsistent with these proffers because one does not "impl[y] the falsity of the other." *Shannon*, 803 F.3d at 785. It may be true that Grogan loaned his car to the kidnapper without personally knowing the victim or being involved with the kidnapping itself. Nowhere in the proffer does Grogan claim he knew the victim personally or even knew what the kidnappers

planned to do once they left with his car.  So Grogan's testimony at trial was not inconsistent with his proffer and admission of the proffer was improper.

The government suggests these five proffers may serve as background or *res gestae* evidence.  Such evidence is admissible in limited circumstances to show conduct that is "inextricably intertwined" with the charged offense.  *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).  But it is not a backdoor to get around other evidentiary rules.  *Id.* at 697–98.  Evidence admissible under this principle "contains severe limitations as to 'temporal proximity, causal relationship, or spatial connections' among the other acts and the charged offense."  *Id.* at 698 (quoting *Hardy*, 228 F.3d at 749).  Generally, this category includes evidence that "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* (quoting *Hardy*, 228 F.3d at 748).

But the government does not explain why it needed to provide background except to "rebut[] Grogan's inconsistent testimony" that "the December 7th search of his Dodge Journey was based on an invalid search warrant containing fraudulent allegations."  Appellee Br. at 26–27.  Nor does it explain why the proffer was the necessary vehicle to provide that background evidence.  If the government thought Grogan's discussion of the warrants was improper, it should have objected to his testimony rather than presenting evidence that violated the terms of the proffer agreement.

**III.**

Even if the district court erred in admitting the proffers, we will not reverse unless the error was harmful.  An error is harmful if we lack fair assurance "that the judgment was not substantially swayed by the error."  *United States v. Craig*, 953 F.3d 898, 906 (6th Cir. 2020) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).  Said differently, an error is harmless "unless it is more probable than not that the error materially affected the verdict." *United States v. Jaffal*, 79 F.4th 582, 602 (6th Cir. 2023) (quoting *United States v. Warshak*, 631 F.3d 266, 324 (6th Cir. 2010)).

If the evidence admitted at trial is overwhelmingly indicative of guilt, an error may be harmless. *See United States v. Rogers*, 118 F.3d 466, 478 (6th Cir. 1997); *see also United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001) (finding harmless error in light of "overwhelming" other evidence of guilt); *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002) ("Whether the jury was 'substantially swayed' by the improper admission of evidence. . . in a criminal trial generally depends on whether the properly admissible evidence of the defendant's guilt was overwhelming."). But it is not just about the other evidence admitted at trial. We must also consider the prejudicial effect of the improperly admitted evidence. *Craig*, 953 F.3d at 907 ("[T]he inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." (internal quotation marks omitted)). Here, both issues are at play. So even if the evidence of guilt is sufficient, if the improperly admitted evidence is highly prejudicial, the error may be harmful. And since the government bears the burden of showing an error was harmless, if we are uncertain, "the tie goes to the criminal defendant." *A.K. ex rel. Kocher v. Durham Sch. Servs., L.P.*, 969 F.3d 625, 629 (6th Cir. 2020).

Although we've found that the district court should not have admitted testimony about several of the proffer statements, we focus on the admission of the proffer on the drug ownership. As we explain, the prejudicial effect of that error was harmful enough to warrant a new trial.

Start with possession. The government had to prove that Grogan knowingly possessed the drugs that police found in the car. *See United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006). That possession can be actual or constructive. *United States v. Crump*, 65 F.4th 287, 298 (6th Cir. 2023). Here, there was no evidence of actual possession, so the government's theory was constructive possession. Constructive possession requires the defendant to knowingly exercise "ownership, dominion, or control" over either the contraband itself or the place he concealed it. *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (internal quotation marks omitted). But "[p]hysical proximity to drugs, or mere presence in an area where drugs are found, is not sufficient." *Id.* We employ the same test to show constructive possession of a firearm, so firearms cases are instructive. *See United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007).

In that context, we have found that, especially when the defendant is in nonexclusive possession of a vehicle, the government must present some evidence beyond proximity for a jury to infer constructive possession. *United States v. Bailey*, 553 F.3d 940, 944 n.3, 947–48 (6th Cir. 2009); *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (finding constructive possession when the victim saw the defendant with the gun shortly before police found the gun in the defendant's vehicle); *United States v. Campbell*, 549 F.3d 364, 375–76 (6th Cir. 2008) (finding constructive possession when a witness testified that there was no firearm in her vehicle before the defendant got in, indicating he brought it with him).

In *Bailey*, we held that the government presented insufficient evidence that Bailey constructively possessed a firearm found in a vehicle that he was driving. 553 F.3d at 945–46. The only evidence showing constructive possession was that Bailey drove the vehicle where police found the firearm. *Id*. at 944–46. His fingerprints were not on the firearm. *Id*. at 946. The vehicle was not his—he had borrowed it. *Id*. And someone else used the vehicle on the night he was arrested and in the days before. *Id*. The government tried to argue that because Bailey fled from the police, the jury could infer that Bailey fled to avoid being found with the firearm. *Id*. at 945–46. But the court rejected that theory. *Id*. at 946. Bailey also had drugs in his pocket, so evading arrest could just as likely been linked to evading detection of the drugs. *Id*. Thus, "no juror could conclude beyond a reasonable doubt that the mere fact that Bailey was driving the car meant that Bailey" possessed the gun. *Id*.

This case is like *Bailey*—though the government's evidence is stronger. Aside from Grogan's proffer admitting ownership of the drugs, the government's primary evidence of constructive possession was that police found the drugs in the vehicle he was driving. The government never tested the drugs for Grogan's DNA—which would have settled the issue. R. 94, Trial Tr., pp.300–01, PageID 681–82. And although Grogan had borrowed the vehicle for about a year total, Detective Volpe's testimony indicated that seven days before his arrest, Grogan had loaned it to his friends. Additionally, Grogan testified that he had just gotten the vehicle out of the shop five or six days before his arrest. So Grogan was not in exclusive possession of the vehicle in the week before the drug's discovery—although it appears that he had possession in the time frame immediately leading up to the search. Had the drugs been in

plain view, the government may have shown that Grogan knew they were there. But they were not. They were inside a box in the center console. And unlike prior cases finding constructive possession, no one saw the drugs in Grogan's hands, and no one could confirm when the drugs entered the vehicle. *See Arnold*, 486 F.3d at 183; *Campbell*, 549 F.3d at 375–76.

Here, the government argues that because Grogan drove the car, and it had his ID and a bank receipt with his name on it inside, he must have also placed the drugs in the car. To be sure, this is something, but it mostly shows proximity to the drugs. It's not overwhelming evidence of constructive possession. Grogan's ex-girlfriend testified that he ran from police on the day of his arrest. But like *Bailey*, this may have been an attempt to avoid discovery of Grogan's other contraband——the firearm that did have his DNA on it. Under *Bailey*, without Grogan's proffer admitting ownership of the drugs, it is not clear that the "mere fact that [Grogan] was driving the car meant that [he] had placed" the drugs in the center console. 553 F.3d at 946.

But regardless of whether we think the government presented sufficient evidence of constructive possession, we aren't resolving that precise question here. Ultimately, we are assessing the impact of admitting what was essentially Grogan's drug-ownership confession. So we evaluate the impact of the proffer statement in light of the strength of the remaining evidence that we just discussed. *See Craig*, 953 F.3d at 907 (explaining the question is not "merely whether there was enough [remaining evidence] to support the result" in isolation, but rather, whether the error itself likely had a prejudicial effect on the verdict (internal quotation marks omitted)).

And to that, we find that even if the government's remaining evidence makes it implausible that anyone else owned the drugs, its heavy reliance on the proffer—a confession in which Grogan admits the drugs were his—undermines our confidence that "the judgment was not substantially swayed by the error." *Id.* at 906 (quoting *Kotteakos*, 328 U.S. at 765).

A confession, unlike other evidence, is "extremely probative of guilt." *United States v. Wolf*, 879 F.2d 1320, 1324 (6th Cir. 1989). To determine whether an improperly admitted confession is harmless, we consider whether "absent" the confession, "it is clear beyond a

reasonable doubt that the jury would have returned a verdict of guilty." *Id.* Our precedent indicates that confessions are likely to be harmful when the prosecution makes a point of highlighting the admission or uses the admission to add color to circumstantial evidence. *See id.* at 1324–25 (holding that an improperly admitted voluntary confession "played too important a role in this case to warrant a finding of harmless error," especially when the prosecution relied on it four times in closing argument); *see also United States v. Zakhari*, 85 F.4th 367, 378 (6th Cir. 2023) (reversing conviction after the wrongful admission of a confession of attempted statutory rape because "the power of a confession" eclipsed other supporting evidence).

The government did exactly that—it repeatedly relied on Grogan's confessions in its closing statement. The government encouraged the jury to "[l]isten to even what Juan said, what Mr. Grogan said." R.94, Trial Tr., pp.484, PageID 865. And worked through each of the proffer admissions. Given the government's heavy reliance on Grogan's improperly admitted proffers, and the lack of direct evidence aside from his confession showing possession of the drugs, we find it "more probable than not that the error materially affected the verdict." *Jaffal*, 79 F.4th at 602 (internal quotation marks omitted); *see also Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (majority opinion) ("[C]onfessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." (internal quotation marks omitted)).

Because the district court's improper admission of Grogan's proffer confessing ownership of the drugs was harmful and requires reversal, we need not individually assess the harmful effect of the other improper proffer admissions.

## IV.

For the reasons stated, we REVERSE and REMAND for further proceedings consistent with this opinion.[1]

---

[1]Grogan did not challenge his conviction under count three of the indictment, possession of a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), so that conviction is unaffected by this opinion. But because counts one and three were grouped for guideline calculation purposes, we vacate the entire sentence and remand for proceedings consistent with this opinion.