NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0065n.06

Case No. 25-5085

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 30, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| EUGENE LARON FISHBACK, | ) ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: COLE, MATHIS, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. Eugene Fishback purchased over 150,000 fentanyl-laced pills from his supplier over the course of a few years. He then resold the pills to buyers for profit. After searches of items and premises tied to Fishback uncovered large quantities of drugs and a cache of weapons, a grand jury indicted Fishback on various drug-distribution counts. A federal jury convicted him of all charges, and the district court sentenced him to 480 months' imprisonment. On appeal, Fishback presses sufficiency-of-the-evidence challenges to his convictions. He also contests the district court's application of four Sentencing Guidelines provisions. Because Fishback's arguments all fail, we affirm.

I

Eugene Fishback sold fentanyl in eastern Kentucky for years. Christopher Smith was his primary supplier. Starting in 2019, Fishback would exchange cash for fentanyl-laced pills from Smith at least every other day. In the first transaction, Fishback acquired 5,000 pills.

Fishback would sometimes buy up to 10,000 pills at a time. By the time Smith moved to California in October 2022, Fishback had purchased approximately 150,000 pills from him. And when Smith later returned to Kentucky, he sold a couple thousand more pills to Fishback before authorities arrested Smith in October 2023.

Between April 2019 and December 2023, law-enforcement officers caught Fishback with large quantities of fentanyl on four different occasions. The first incident occurred on April 2, 2019, after a Lexington Police Department officer pulled Fishback over for speeding. As he approached Fishback's car, the officer smelled "fresh marijuana" and noticed that Fishback was "shaking." Day 1 Trial Tr., R.192, PageID 1981-82. A second officer arrived, and they conducted a search. Fishback had $826 in cash and a digital scale in his pocket. The officers also found approximately 18 grams of powder fentanyl, along with varying amounts of marijuana, cocaine, methamphetamine, and ethylpentylone (also known as "bath salts").

Thirteen months later, on May 3, 2020, a housekeeper at the Sure Stay Plus hotel in Lexington, Kentucky, found a "grayish brown" "block" in a pair of jeans while cleaning a room that Fishback had rented the night before. *Id.* at PageID 2022. The hotel's surveillance footage showed Fishback wearing the same pair of jeans. Hotel management called the police, who recovered the jeans. Lab testing revealed that the block from the jeans contained 25 grams of fentanyl.

Police found more fentanyl connected to Fishback on October 11, 2023. Management at the Stoney Brooke apartment complex in Lexington evicted a tenant for failing to pay rent. The supposed tenant went by the name of "Blake Faulk." Day 2 Trial Tr., R.163, PageID 1077. But Faulk didn't actually live there. Instead, "somebody got" the apartment for Fishback. Day 3 Trial Tr., R.164, PageID 1395-96. Fishback and his girlfriend, Tedi Hawkins, lived at the apartment

with their pets for about a month and a half before the eviction order. No one else had a key to the apartment during that time. The apartment had personal photographs of Fishback and Hawkins, as well as mail addressed to both, and they had ordered food to the apartment via DoorDash. Fayette County constables executed an eviction warrant and cleared the apartment so staff could begin removing their items. Apartment staff found four guns and about 7,000 fentanyl-laced pills—weighing 1.6 pounds—in a closet, next to numerous male, adult-sized Nike, Jordan, and Puma shoes.

Just a few months later, on December 6, 2023, law-enforcement officers executed a search warrant at the Raintree apartment complex in Lexington. Hawkins's sister leased the unit, but Hawkins lived and paid rent there, and Fishback sometimes stayed overnight. Fishback would also store drugs there. Officers discovered "just under 250 fentanyl pills and carfentanil pills" at the apartment. *Id.* at PageID 1548. The fentanyl pills weighed 14.56 grams and the carfentanil pills weighed 8.82 grams. Carfentanil, which is even more potent than fentanyl, is typically used as a "veterinary medicine to sedate and potentially euthanize zoo animals, hippopotamus[es], elephant[s], things of that nature." *Id.* at PageID 1564.

That same day, officers arrested Fishback outside a clothing store in Lexington. The officers searched Fishback's car and found even more fentanyl-laced pills, totaling 43.05 grams, as well as carfentanil-laced pills, totaling 22.76 grams.

A federal grand jury charged Fishback with one count of conspiracy to distribute and possess with the intent to distribute a substance containing 400 grams or more of fentanyl and 10 grams or more of carfentanil. It also charged Fishback with four counts of possessing with the intent to distribute fentanyl—based on the fentanyl found in Fishback's car (count two), the Sure Stay Plus hotel (count three), the Stoney Brooke apartment (count four), and the Raintree

apartment (count five). Hawkins was charged as Fishback's co-defendant for all counts except the ones related to the car and hotel, and she later pled guilty to the conspiracy count and to possessing with the intent to distribute the Stoney Brooke fentanyl.

While in jail awaiting trial, Fishback talked to Hawkins on a three-way call. Fishback told Hawkins to withdraw her guilty plea and offered her money. He suggested that, without the plea, the Government would have a harder time proving the conspiracy. Following Fishback's direction, Hawkins moved to withdraw her guilty plea, but the district court denied the motion.

Fishback proceeded to trial. Smith and Hawkins, among others, testified against Fishback and detailed his drug-distribution activities and connection to both the Stoney Brooke and Raintree apartments. A jury found Fishback guilty on all five counts. At the sentencing hearing, the district court applied Sentencing Guidelines enhancements for maintaining a drug premises, possessing a firearm during a drug offense, and obstruction of justice. The district court ultimately sentenced Fishback to 480 months' imprisonment. This appeal followed.

II

Fishback nominally contests all five convictions for lack of sufficient evidence. But he forfeited any arguments aimed at his convictions based on the fentanyl found during the 2019 traffic stop and the search of the Raintree apartment by failing to develop them in his opening brief. *See United States v. Fox*, 134 F.4th 348, 372 (6th Cir. 2025) (per curiam). Fishback instead focuses his sufficiency-of-the-evidence challenge on (1) the conspiracy conviction, (2) the conviction based on fentanyl found at the Sure Stay Plus hotel, and (3) the conviction based on fentanyl found at the Stoney Brooke apartment. Each of his arguments fails.

A

In assessing a sufficiency-of-the-evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The defendant thus bears "a very heavy burden." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008) (citation omitted). "Reversal is appropriate only where the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Underwood*, 129 F.4th 912, 939 (6th Cir. 2025) (cleaned up). That evidence "may be direct or circumstantial," and the "testimony of a single witness" can be enough. *Id.* And "we must resolve any evidentiary conflicts or credibility disputes in a manner that favors the government's version of the facts." *United States v. Hinojosa*, 67 F.4th 334, 340 (6th Cir. 2023).

B

We first address the conspiracy count. The jury convicted Fishback of conspiracy to distribute and possess with the intent to distribute 400 grams or more of fentanyl and 10 grams or more of carfentanil. "To prove a drug conspiracy under 21 U.S.C. §§ 846, 841(a)(1), the government must prove (1) an agreement to violate the drug laws, and (2) each conspirator's knowledge of, intent to join, and participation in the conspiracy." *United States v. Matthews*, 31 F.4th 436, 446 (6th Cir. 2022) (cleaned up). Here, the Government also had to prove "drug quantity." *United States v. Dado*, 759 F.3d 550, 570 (6th Cir. 2014). "An agreement can be tacit, not formal, and the government may meet its burden of proof through circumstantial evidence." *United States v. Williams*, 998 F.3d 716, 728 (6th Cir. 2021) (cleaned up). Fishback does not

contest his knowledge of and intent to join the conspiracy. He instead challenges only the existence of an agreement and drug quantity. But ample evidence supported both.

Start with the agreement. Smith testified that he would sell pills to Fishback at least "every other day." Day 2 Trial Tr., R.163, PageID 1241. Fishback would pay Smith in cash, sometimes buying as many as 10,000 pills at a time. And Smith approximated that he sold 150,000 pills to Fishback before he moved to California. Hawkins, for her part, testified that she accompanied Fishback when he distributed fentanyl pills. She also sold pills that she obtained from Fishback. Hawkins and Fishback would sometimes share a portion of the proceeds. Given the evidence of "ongoing purchases or arrangements, large quantities of drugs," and "an established method of payment," a rational juror could conclude that Fishback participated in an agreement to distribute a controlled substance. *Williams*, 998 F.3d at 728.

Turn to quantity. Trial testimony established that the fentanyl pills found at the Stoney Brooke apartment alone weighed 718.93 grams—well above the 400 grams the Government had to prove. The evidence also showed that law-enforcement officers discovered approximately 250 pills containing fentanyl and carfentanil from the Raintree apartment. The carfentanil pills from the apartment weighed 8.82 grams. And the carfentanil pills found in Fishback's car that same day weighed 22.76 grams, exceeding the 10 grams alleged in the second superseding indictment. The trial record thus contained "substantial and competent evidence" supporting the jury's finding on quantity. *Underwood*, 129 F.4th at 939 (citation omitted).

Fishback does not meaningfully contest that the evidence at trial, viewed in the Government's favor, established a conspiracy to sell large quantities of deadly drugs. Instead, he contends that Smith lacked credibility and gave inconsistent testimony. But it's the jury's job—not ours—to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *Williams*, 998 F.3d at 727-28 (citation omitted). Also unavailing is Fishback's complaint about a lack of "corroborating" evidence regarding the number of pills he purchased from Smith. Fishback Br. 13. Even putting aside the physical evidence produced at trial showing that Fishback possessed vast quantities of fentanyl and carfentanil, a single witness's testimony is enough to establish the essential elements of a crime. *See Underwood*, 129 F.4th at 939. So Fishback's lack-of-corroboration argument—like his broader challenge to the conspiracy evidence generally—goes nowhere. We therefore uphold the conspiracy conviction.

C

Fishback next argues that the evidence at trial was insufficient to sustain his convictions for possessing with the intent to distribute (1) fentanyl found at the Sure Stay Plus hotel in May 2020 and (2) fentanyl found at the Stoney Brooke apartment in October 2023. But Fishback fails to meet the "heavy burden" required to overturn those convictions. *Fekete*, 535 F.3d at 476 (citation omitted).

To establish that a defendant possessed with the intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), the Government must prove that "(1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute," *United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010). Possession, moreover, may be either actual or constructive. *United States v. Latimer*, 16 F.4th 222, 225 (6th Cir. 2021).

We quickly dispense with Fishback's argument regarding the fentanyl from the Sure Stay Plus hotel. A housekeeper found a block of fentanyl in jeans while cleaning a room. Fishback had booked that same room for the previous night. Still photos from the hotel's surveillance footage also showed Fishback wearing the recovered pair of jeans. Fishback contends only that

7

the Government failed to prove that he "had knowledge of the items in the pants pocket," and suggests that the jeans might have belonged to "others" who entered the room that night. Fishback Br. 19. But a rational juror could infer that, because Fishback wore the same fentanyl-containing jeans—later found in a hotel room booked in his name—he knowingly possessed the fentanyl.

As for the Stoney Brooke apartment, Fishback's lone argument is that the Government failed to establish that he had "constructive possession" of the 7,000 fentanyl pills found in the apartment closet. Fishback Br. 14. "Constructive possession requires the defendant to knowingly exercise ownership, dominion, or control over either the contraband itself or the place he concealed it." *United States v. Grogan*, 133 F.4th 553, 564 (6th Cir. 2025) (cleaned up). "Physical proximity to drugs, or mere presence in an area where drugs are found, is not sufficient." *Id.* (cleaned up). "There must be other incriminating evidence." *United States v. Fairley*, 137 F.4th 503, 512 (6th Cir. 2025) (cleaned up). "We have," however, "repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom or personal living space." *United States v. Brown*, 856 F. App'x 36, 40 (6th Cir. 2021) (citation omitted).

The trial evidence supported the jury's finding that Fishback constructively possessed the fentanyl at the Stoney Brooke apartment. Although the unit was rented in someone else's name, Hawkins testified that "somebody got" the apartment "for [Fishback]." Day 3 Trial Tr., R.164, PageID 1395-96. Fishback and Hawkins lived there for the month and a half leading up to the search of the apartment. The apartment contained personal photographs of Fishback and Hawkins, along with mail addressed to both. They also had food delivered to the unit. Only Fishback and Hawkins had keys to the apartment—Hawkins was not aware of anyone else who had a key. Hawkins testified that she didn't "pick up any pills during" her time at Stoney Brooke, suggesting that Fishback must have acquired them. *Id.* at PageID 1402. She also testified that Fishback

8

distributed drugs while they lived at the apartment. The bag of 7,000 pills, moreover, was found in a closet alongside male, adult-sized shoes—"Nikes, Jordans, and Pumas" to be specific, Day 2 Trial Tr., R.163, PageID 1065—and Hawkins stated that Fishback would spend his drug money in part on "shoes," Day 3 Trial Tr., R.164, PageID 1400. That all suggests that Fishback not only had "control over . . . the contraband itself," but also "the place he concealed it." *Grogan*, 133 F.4th at 564 (cleaned up).

Fishback maintains that the Government did not "offer[]" a "lease, utility records, or documentation linking" Fishback to the apartment. Fishback Br. 14. But officers did locate "documentation"—particularly, Fishback's mail—in the apartment. That aside, formal documentation that Fishback leased or owned the premises is unnecessary to establish that he had dominion over it or possessed the contraband found inside. *See, e.g.*, *United States v. Trammell*, No. 23-5221, 2024 WL 3163403, at *3 (6th Cir. June 25, 2024) (defendant "exercised dominion" over girlfriend's apartment and constructively possessed firearms inside because he "frequented the apartment and possessed a key to it"). Were it otherwise, drug traffickers could circumvent charges through the kind of sham rental agreement Fishback employed, no matter how overwhelming the indicators of actual and constructive possession. Fishback cites no authority supporting that outcome.

In sum, the Government's "circumstantial evidence" easily crossed the "minimal" threshold required to "connect[]" Fishback "to the contraband." *Latimer*, 16 F.4th at 227 (citation omitted). So sufficient evidence supports Fishback's convictions for possession with the intent to distribute.

9

III

Fishback also challenges his sentence as procedurally unreasonable, contending that the district court erred in applying four Sentencing Guidelines provisions. We disagree.

A

Fishback contends that the district court erred in concluding that all of his drug-related transactions with Smith comprised a "common scheme or plan" under U.S.S.G. § 1B1.3(a)(2). That argument fails.

The quantity of drugs attributable to a defendant determines his base offense level. *See* U.S.S.G. § 2D1.1(c). The base offense level—and thus the drug quantity—is determined by considering the defendant's "relevant conduct, as defined by U.S.S.G. § 1B1.3." *United States v. Knipp*, 138 F.4th 429, 437 (6th Cir. 2025) (cleaned up). Relevant conduct includes all the defendant's acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

Offenses are considered part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Id.* § 1B1.3 cmt. n.5(B)(i). Fishback argues that his interactions with Christopher Smith were not all part of the same common scheme or plan because Smith broke the chain of events by leaving town for a year. But the year-long break Smith took from selling fentanyl pills to Fishback did not change the commonalities in the overall drug-trafficking scheme. Before Smith left and after he returned, the accomplices (Smith, Fishback, and Hawkins) were the same, the purpose (selling counterfeit oxycodone that actually contained fentanyl) was the same, and the modus operandi (Fishback acquiring large quantities of fentanyl pills from Smith to store and sell) was the same. The district court did not err in

10

concluding that Fishback's drug-trafficking activities with Smith, both before Smith left Kentucky and after he returned, constituted relevant conduct.

B

We next reject Fishback's challenge to the district court's application of an enhancement for maintaining a drug premises at the Stoney Brooke apartment.

The Guidelines instruct district courts to apply a two-level enhancement if "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The "enhancement applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Florence*, 150 F.4th 773, 780 (6th Cir. 2025) (cleaned up). Fishback contests only the second and third elements. As to the second element, "[w]hen the defendant doesn't formally own the premises, the touchstone for the maintenance prong is de facto (actual) control." *Id.* "That control need not be either exclusive or continuous." *United States v. Taylor*, 85 F.4th 386, 390 (6th Cir. 2023). And if "the defendant lives" on the premises, the "element is normally easily proved." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013) (citation omitted). As to the third element, the "enhancement requires only that drug activity constitute *one of the* defendant's primary or principal *purposes*, not *the sole* purpose, for maintaining the premises." *United States v. Tripplet*, 112 F.4th 428, 433 (6th Cir. 2024) (cleaned up) (emphasis in original). The "evidentiary bar for applying the enhancement is a relatively low one." *United States v. Terry*, 83 F.4th 1039, 1044 (6th Cir. 2023) (cleaned up).

We review for clear error the district court's finding that Fishback maintained a drug premises. *Florence*, 150 F.4th at 782. As recounted above, *supra* pp. 8-9, the record indicates that Fishback had actual control over the Stoney Brooke apartment. Hawkins testified that "somebody

11

got" the apartment "for [Fishback]." Day 3 Trial Tr., R.164, PageID 1395-96. Fishback had a key to the apartment and lived there with Hawkins for a month and a half prior to the eviction order. No one else had access to the apartment. The apartment contained photographs of Fishback and mail addressed to him. And Fishback dealt drugs out of the apartment. That all suggests that Fishback had "de facto" control over the Stoney Brooke apartment, *Florence*, 150 F.4th at 780, and so the district court didn't clearly err in concluding as much.

Because Fishback's challenge to the third element is likewise "factual in nature," we again "apply clear error review." *United States v. Simpson*, 138 F.4th 438, 457 (6th Cir. 2025). And again the district court did not clearly err. Apartment staff found about 7,000 fentanyl pills, located next to four firearms, in a bedroom closet. And Hawkins testified that Fishback distributed the drugs while living at the apartment. The "sheer volume" of fentanyl, the presence of "firearm[s]," and the testimony that Fishback dealt drugs out of the apartment support the district court's finding that at least "*one of*" Fishback's primary purposes in maintaining the premises was to enable "drug activity." *Tripplet*, 112 F.4th at 433 (citation omitted). We therefore affirm the district court's application of the enhancement.

C

Fishback also challenges the enhancement for possessing the four firearms found at the Stoney Brooke apartment. Fishback's arguments again fail to persuade.

The Guidelines provide that a district court should apply a two-level enhancement for drug crimes if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The "government must show, by a preponderance of the evidence, that (1) the defendant actually or constructively possessed the weapon, and (2) the weapon was possessed during relevant conduct to the offense." *United States v. Brown*, 131 F.4th 337, 343-44 (6th Cir. 2025) (cleaned up).

Fishback contests only the first element: whether he constructively possessed the firearms. We review the district court's finding on that front for clear error. *Id.* at 344.

The district court did not clearly err in finding that Fishback constructively possessed the firearms at the Stoney Brooke apartment. Trial testimony established that apartment staff discovered four firearms next to about 7,000 fentanyl pills in a closet at the Stoney Brooke apartment. As discussed above, the record evidence supported a finding that Fishback maintained the apartment for drug-distribution purposes and constructively possessed the pills located next to the guns. That evidence likewise suggests that Fishback had constructive possession of the firearms. Moreover, Hawkins testified that she did not own the guns and was unaware that the apartment even contained firearms. That leaves Fishback as the "owner[]" of the guns. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (citation omitted). And Fishback's cursory arguments to the contrary do not leave us with a "definite and firm conviction" that the district court made a "mistake" in concluding as much. *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (citation omitted).

D

Finally, Fishback faults the district court for applying an obstruction-of-justice enhancement. We reject Fishback's arguments.

Section 3C1.1 of the Guidelines imposes a two-level enhancement if "(1) the defendant willfully . . . attempted to obstruct or impede[] the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." Examples of conduct amounting to obstruction of justice include "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or

attempting to do so." *United States v. French*, 976 F.3d 744, 748-49 (6th Cir. 2020) (quoting U.S.S.G. § 3C1.1 cmt. n.4(A)). "We review a district court's application of the obstruction enhancement to a particular defendant's conduct for clear error." *United States v. Page*, 163 F.4th 385, 400 (6th Cir. 2025).

The district court did not clearly err in applying the obstruction-of-justice enhancement. Hawkins—Fishback's co-defendant—pled guilty to one count of conspiracy to distribute and one count of possession with intent to distribute fentanyl. Fishback decided to go to trial. But during a jail call before his trial, Fishback advised Hawkins to withdraw her guilty plea and told Hawkins what excuses to use before the district court. Fishback asserted that if Hawkins withdrew her plea and testified that she never saw Fishback with any drugs, it would be harder for the Government to prove the conspiracy count. Fishback also "offer[ed] to put money on [her] books." Hawkins Hearing Tr., R.153, PageID 878. Hawkins obliged and moved to withdraw her plea. Once she did, Fishback followed through by sending Hawkins money.

The district court ultimately denied Hawkins's motion to withdraw. But at the hearing on the motion, Hawkins agreed with the characterization that Fishback "coerce[d]" or at least "convince[d]" her to withdraw her guilty plea. *Id.* at PageID 876-77. And as the district court explained at the sentencing hearing, if Fishback's efforts with Hawkins had been successful, they "would have had a severe impact on the trial with regard to her testimony" and "affected the strength or weakness of the United States' case." Sentencing Hearing Tr., R.196, PageID 2396. On that uncontested account, we see no error in the district court's finding that Fishback "obstructed justice by trying to coerce [Hawkins] to withdraw [her] guilty plea." *United States v. Prater*, No. 22-5599, 2024 WL 3634526, at *6 (6th Cir. Aug 2, 2024).

14

Fishback's only argument is that Fishback did not have the "requisite intent" to obstruct justice. Fishback Br. 20. Instead, Fishback describes his actions as a "misguided attempt to help Ms. Hawkins do what he believed was in her best interest." *Id.* But Fishback's "characterization at most amounts to a different reading" of the record. *United States v. Jackson*, 154 F.4th 422, 430 (6th Cir. 2025). And "[w]here there are two permissible views of the evidence" the "factfinder's choice between them cannot be clearly erroneous." *Id.* (citation omitted). So Fishback's argument "runs aground on the clear-error standard." *Id.*

\* \* \*

We affirm the judgment of the district court.